IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8343
_____

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                versus

HENRY DAVID THOMAS,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
(May 11, 1993)

Before WIENER, BARKSDALE, and DEMOSS, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Henry David Thomas appeals his conviction
of possession of firearms by a previously convicted felon under 18
U.S.C. § 922(g)(1).  He asserts that because, under Texas law, his
prior Texas felony conviction does not bar the firearms possession
for which he was convicted in federal district court, his federal
prosecution was barred by the exceptions to § 922(g)(1) created by
18 U.S.C. § 921(a)(20), the Firearm Owners Protection Act of 1986
(FOPA).[1]   Disagreeing with Thomas's reasoning and finding no
reversible error, we affirm.

_____

[1] Pub. L. No. 99-308, 100 Stat. 449 (1986).

FACTS AND PROCEDURAL HISTORY

Thomas was originally indicted on one count of possession of a firearm by a convicted felon under § 922(g) in October 1991. That indictment was dismissed on Thomas's motion because his predicate state felony conviction had been set aside under Kansas law.[2]  In January 1992, Thomas was again indicted for violating § 922(g))this time on four counts.[3]  The predicate state felony conviction for this indictment was a 1959 Texas conviction for "felony theft," a non-violent felony in Texas.

Thomas argued to the district court, and he asserts on appeal, that the government could not properly prosecute him under § 922(g) because he had not lost the right to possess a firearm under Texas law as a result of his felony conviction.  In Texas, possession of a firearm by a non-violent felon is not proscribed.  Only a violent felon is prohibited from "possess[ing] a firearm away from the premises where he [or she] lives."[4]  Thomas reasons that, as he is not prohibited from possessing a firearm under Texas law, his civil rights have been fully "restored" for the purposes of § 921(a)(20),

---

[2] See 18 U.S.C. § 921(a)(20).

[3] The guns that Thomas possessed were seized from four sources.  On August 30, 1991, Thomas sold a semi-automatic pistol to a Drug Enforcement Officer.  That sale was the only act of possession mentioned in the 1991 indictment, and it was the basis of the first count of the 1992 indictment.  On October 7, 1991, agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) executed three search warrants, finding guns at Thomas's residence, his business, and in his automobile.  Those guns were the bases of counts two, three, and four of the 1992 indictment.

[4] TEX. PENAL CODE ANN. § 46.05 (West 1989).

and thus he is not subject to conviction under § 922(g).

The district court denied Thomas's motion to dismiss the indictment based on that argument, and the jury convicted him on all four counts.  Thomas timely appealed.

II

ANALYSIS

In his appeal, Thomas relies on two theories.  His primary argument is that, as he was not prohibited from possessing a firearm under Texas law, he could not and did not violate § 922(g).  He also asserts that his re-indictment under § 922(g) with four counts))as opposed to one in the original indictment))demonstrates prosecutorial vindictiveness, thereby violating his due process rights.  We address these arguments in inverse order.

A.  Prosecutorial Vindictiveness

The original indictment was dismissed because the prior conviction on which it was based))the Kansas conviction))had been set aside and thus was not available as a predicate offense under § 922(g).  Thomas states that during the plea negotiations under the first indictment, the prosecutor had assured Thomas that if he would plead guilty to the one count of violating § 922(g), predicated on the Kansas felony conviction,[5] the government would not charge him with the other violations of which it had evidence.

_____

[5] We note that it is not clear from the record whether the Kansas conviction would be an acceptable predicate offense under § 922(g).  See our discussion below.

3

Thomas argues that because he asserted his right to be charged properly under § 922(g), the prosecutor vindictively raised the stakes in the second indictment. Thomas concedes that this claim was raised for the first time on appeal. As no manifest injustice will result from Thomas being charged additionally with federal firearms crimes he clearly committed, we reject his vindictiveness claim.[6]

B. Texas Felons with Guns

The principal thrust of Thomas's insistence that he was wrongfully convicted under § 922(g) is that when the law of the state that obtained the predicate felony conviction does not proscribe possession of a firearm at the time and in the manner at issue, federal law does not criminalize such possession. Although this issue, which involves the interaction of states' laws with §§ 921(a)(20) and 922(g)(1), has been addressed by several other federal circuit courts, it is a matter of first impression in our court. And, as this question is purely a legal one, our review is plenary.

Under § 922(g)(1) it is unlawful for anyone "who has been convicted in any court of a crime punishable for a term exceeding

---

[6] See United States v. Lopez, 923 F.2d 47, 49 (5th Cir.)(citing United States v. Brunson, 915 F.2d 942, 944 (5th Cir. 1990)), cert. denied, __ U.S. __, 111 S. Ct. 2032 (1991). Concerning the merits of Thomas's vindictiveness argument, see United States v. Goodwin, 457 U.S. 368, 376-80 (1982); Bordenkircher v. Hayes, 434 U.S. 357, 362 (1978); United States v. Molina-Iquado, 894 F.2d 1452, 1453-55 (5th Cir.), cert. denied, 498 U.S. 831 (1990).

4

one year . . . [to] possess . . . any firearm . . . which has been shipped or transported in interstate commerce."[7]  As our colleagues on the Fourth Circuit have accurately observed, however, "[t]he clarity of [§ 922(g)(1)] is clouded by 18 U.S.C. § 921(a)(20)."[8] Section 921(a)(20) was added to the Federal Gun Control Act by FOPA in 1986 to give federal effect to state statutes that fully "restore" the civil rights of convicted felons when they are released from prison, or are granted a pardon, or have their convictions expunged.  In effect, FOPA gave the states' statutes federal effect by allowing the state that obtained the conviction to determine eligibility of the felon to possess a firearm without violating federal law.[9]

Since its enactment, § 921(a)(20) has been an integral element of the definition of "felony" or, more precisely, of the term "crime punishable by imprisonment for a term exceeding one year" found in § 922(g)(1).  It provides:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.[10]

---

[7] 18 U.S.C. § 922(g)(1) (1988 & Supp 1992).

[8] United States v. Essick, 935 F.2d 28, 29 (4th Cir. 1991).

[9] See United States v. Cassidy, 899 F.2d 543, 546-49 & nn. 9, 11 (6th Cir. 1990).

[10] 18 U.S.C.S. § 921(a)(20) (Supp. 1992)(emphasis added).

5

Thomas asserts that his civil rights have been "restored" under the Texas Penal Code because he is not prohibited by state law from possessing a firearm. Before addressing his claim, we shall analyze the rulings of the other circuit courts on this matter.

1. Background

The Fourth Circuit construed state law interaction with § 921(a)(20) in United States v. Essick[11] and United States v. Etheridge.[12] In Essick, that court reversed a conviction of possession of a firearm predicated on a North Carolina conviction. The court looked to North Carolina's prisoner release statute, which provided that upon the unconditional discharge of an inmate by the state department of corrections, the "rights of citizenship [that were] forfeited, shall [be] restored," and the "agency or court having jurisdiction over the person whose rights are restored . . . [shall] automatically and immediately issue a certificate evidencing the restoration of such rights."[13] The Essick court held that the mandatory issuance of the certificate and the explicit restoration language of the statute "clearly restored the general citizenship rights of an ex-felon, and that such restoration included the limited right to possess firearms."[14] The court held

---

[11] 935 F.2d at 30.

[12] 932 F.2d 318, 322 (4th Cir.), cert. denied, 112 S. Ct. 323 (1991).

[13] Essick, 935 F.2d at 30 (citing and discussing N.C. GEN. STAT. §§ 13-1, 13-2 (1986)).

[14] Id. (emphasis omitted).

6

that because the government had failed to prove that Essick's right to possess firearms under North Carolina law was limited))after five years North Carolina felons have the unlimited right to possess firearms))he could not be convicted under § 922(g).

By contrast, that same circuit court in Etheridge held that Virginia's statutes had not restored the rights of a convicted felon to possess a firearm.  The court did not describe either the state statute or any certificate issued by the state specifically restoring the rights of released felons.  We construe such silence to indicate that no general restoration of rights statute or certification provision existed in Virginia at the time.  The Etheridge court noted that a procedure was contained in the Virginia Code under which a convicted felon might proceed affirmatively to seek restoration of his right to possess a firearm.[15]  That procedure was not automatic, however, and Etheridge had not availed himself of it.  For those reasons, among others, the court held that for purposes of § 921(a)(20) his civil rights had not been "restored" under Virginia law because his right to carry a firearm had not been restored; thus, his conviction under § 922(g)(1) was not obtained in error.

In United States v. Erwin,[16] the Seventh Circuit held that the applicable provisions in Illinois did not "restore" convicted felons' rights to possess firearms.  The Illinois statutes

---

[15] Etheridge, 932 F.2d at 322-23.

[16] 902 F.2d 510, 512-13 (7th Cir.), cert. denied, 498 U.S. 859 (1990).

7

contained only a negative option: Upon release from prison, a felons' rights would be restored automatically unless a particular authority proscribed restoration. As the state's firearms licensing authority did not authorize the licensing of guns to convicted felons, their rights were not in fact restored. The Erwin court held that possession of a firearm by a felon whose predicate conviction was obtained under Illinois law would be a violation of § 922(g)(1).

The Sixth Circuit addressed the restoration issue in United States v. Cassidy, and reversed the dismissal of a count under § 922(g)(1). The Cassidy court examined Ohio law, which mandated the issuance of a "Restoration Certificate" that "restored 'the rights and privileges forfeited by conviction; namely the right to serve on juries and hold offices of honor, trust, or profit.'"[17] Although the certificate "was silent concerning firearms," Ohio law specifically provided that convicted felons could not possess firearms.[18] The court analyzed which rights needed to be restored to a convicted felon for his or her "civil rights" to be considered restored for purposes of § 921(a)(20).[19] The court found that Cassidy's civil rights had been restored, but that he was subject to conviction under § 922(g) "because he was expressly restricted

---

[17] Cassidy, 899 F.2d at 544.

[18] Id. at 545 n.5.

[19] This is discussed more below. See infra notes 24-25 and accompanying text.

under state law from possessing a firearm."[20]  We read Cassidy as ruling that to be protected by § 921(a)(20) from a conviction under § 922(g)(1) the felon must have all of his civil rights "restored" and not be prohibited by any provision of law of the state of conviction from possessing a firearm as well.

Two other circuits that have addressed this issue are the First and the Ninth.  The Ninth Circuit adopted a substantial part of the reasoning of the Sixth Circuit's Cassidy opinion; the First Circuit has struck off in another direction.  In reaching their respective decisions, the Ninth Circuit determined that "Congress had [unambiguously] manifested its intention,"[21] and the First Circuit "read the plain language of §§ 921(a)(20) and 922(g)(1), as well as the legislative history."[22]  Despite reading the same unambiguous material, however, the two courts reached very different results.

In United States v. Gomez, the Ninth Circuit performed a two-

---

[20] Cassidy, 899 F.2d at 550.  As was pointed out in Erwin, 902 F.2d at 512-13, the correctness of part of the Sixth Circuit's holding is questionable.  The Cassidy court stated, by way of a footnote, that a convicted felon who received a general restoration of rights certificate, which was restricted by a state law that prohibited possession of a firearm by a convicted felon, could be prosecuted under § 922(g)(1) even though he was not given notice of the restriction.  899 F.2d at 549 n.5. Considering the "expressly provides" language pointed to by the Erwin court, 902 F.2d at 513, we have lingering doubts about this holding of the Sixth Circuit.  See infra notes 36-38 and accompanying text.

[21] United States v. Gomez, 911 F.2d 219, 221 (9th Cir. 1990).

[22] United States v. Ramos, 961 F.2d 1003, 1008 (1st Cir.), cert. denied, 113 S. Ct. 364 (1992).

step analysis.  First, it focused on <u>which</u> "civil rights" were referred to in the phrase "had civil rights restored" and whether essentially all of those civil rights had been restored to the felon by the subject state.  Finding that they had, the court then sought to determine additionally whether "such . . . restoration of civil rights" by the subject state "expressly provides that [a convicted felon] may not ship, transport, possess, or receive firearms."[23]

In discussing first the meaning of the words, "had civil rights restored," the <u>Gomez</u> court stated:

> To determine whether a convicted felon's civil rights have been restored within the meaning of section 921(a)(20), we look to the whole of state law.  In enacting section 921(a)(20), "[t]he intent of Congress was to give effect to state reforms with respect to the status of an ex-convict.  A narrow interpretation requiring that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress."
> There need not be a "full" restoration of rights. "If Congress had intended a requirement of a complete restoration of all rights and privileges forfeited upon conviction, it could easily have so stated."  Congress chose not to impose such a requirement.[24]

To determine what group of restored rights would be less than a "full" restoration yet constitute a sufficient restoration to meet the requirements of § 921(a)(20), the Ninth Circuit has looked to the <u>Cassidy</u> opinion.  In <u>Cassidy</u> the Sixth Circuit had stated:

> Congress intended to encompass those rights accorded to an individual by virtue of his [or her] citizenship in a particular state.  These rights include the right to

---

[23] 18 U.S.C. § 921(a)(20).

[24] 911 F.2d at 220 (citations omitted)(quoting <u>Cassidy</u>, 899 F.2d at 548-49).

vote, the right to seek and hold public office and the right to sit on a jury.[25]

Having thus elected to follow Cassidy, the Ninth Circuit now looks to see whether the state of conviction of the predicate offense restores the felon's rights to vote, to hold public office, and to serve on a jury, to determine whether the felon's "civil rights" have been restored.

The Gomez court therefore examined the Idaho law concerning the rights of released prisoners. Section 18-310 of the Idaho code expressly "restore[s] the full rights of citizenship" of released felons. Also, the court interpreted the laws of Idaho as allowing discharged felons to vote and serve on juries.[26] This was sufficient for the Ninth Circuit to find that Gomez's civil rights had been restored for purposes of § 921(a)(20).

After thus determining that Gomez's civil rights had been restored, the Ninth Circuit looked to see whether the Idaho's restoration of rights "expressly provide[d] that the [convicted felon] may not ship, transport, possess, or receive firearms,"[27] reasoning that if it found that Idaho law placed no such restriction on convicted felons, the felons would not be subject to conviction under § 922(g). Finding that Idaho placed no such

---

[25] Cassidy, 899 F.2d at 549, quoted in United States v. Dahms, 938 F.2d 131, 133 (9th Cir. 1991). The Dahms court interpreted Michigan prisoner release statutes and was later disagreed with on its interpretation of them. See United States v. Driscoll, 970 F.2d 1472, 1478-79 (6th Cir. 1992).

[26] Gomez, 911 at 221.

[27] 18 U.S.C. § 921(a)(20).

11

restriction on convicted felons, the court held that Gomez's conviction "must [be] overturn[ed]."[28]

The First Circuit read the "plain language" of § 921(a)(20) quite differently. The defendant in United States v. Ramos[29] argued that "because as a convicted misdemeanant in Massachusetts, he never lost any of his civil rights except, temporarily, for the period of his probation term," his rights had been restored ipso facto.[30] The court reviewed the operation of the Massachusetts statutes, under which the convicted misdemeanant was never stripped of his civil rights (e.g., the rights to vote, hold public office, be a police officer, or carry a firearm) except while actually in custody or on probation. The court framed the issue as

> whether an individual residing in a jurisdiction which does not strip him or her of any civil rights as a collateral consequence of conviction should be deemed, as appellant urges, to have had his civil rights "restored" for the purposes of § 922(a)(1) [sic], after having served his/her sentence.

The Ramos court analyzed the word "restored" and determined that a "restoration" of civil rights did not occur for purposes of § 922(g)(1) if the state merely released the prisoner. The court concluded that, even though))in a general sense))the convict's civil rights are "recovered" upon release from prison, to interpret that general, passive recovery of rights as co-extensive with §

---

[28] 911 F.2d at 222.

[29] 961 F.2d at 1006.

[30] Id. at 1007. Although Ramos's two prior convictions were classified misdemeanors under Massachusetts law, they each carried maximum sentences of two and a half years and thus qualified under § 922(g)(1)'s "more than one year" definition.

12

921(a)(20)'s provision that the prisoner has not been convicted for purposes of § 922(g)(1) if he or she has actively "had civil rights restored," would effectively "mak[e] the exception so broad as to swallow § 922(g) entirely."[31]  The Ramos court stated that "[t]he point [of § 921(a)(20)] is not just that civil rights were never lost, but that, following conviction, such rights were affirmatively restored."[32]  As Ramos's civil rights had never been affirmatively "restored" by the Commonwealth of Massachusetts, his possession of a firearm violated § 922(g)(1).

The principal difference between the First Circuit's approach in Ramos and the Ninth Circuit's approach in Gomez is that the First Circuit flatly requires an "affirmative[] restor[ation]" of civil rights if the defendant is to come within the ambit of § 921(a)(20)[33]; that court simply refuses to address the rhetorical question "how could a jurisdiction ever 'restore' civil rights to a felon or misdemeanant whose rights were never forfeited?"))while the Ninth Circuit "decline[d] to accept the government's suggestion that the federal statute only recognizes restoration by individual affirmative act."[34]  We find more persuasive the Ninth Circuit's holding that an "affirmative act" or restoration is not required by § 921(a)(20), agreeing that "[i]f Congress intended to require an individual affirmative act of restoration by the state, Congress

---

[31] Id. at 1008 n.6.

[32] Id. at 1008 (emphasis added).

[33] Id.

[34] Gomez, 911 F.2d at 221.

13

could have so provided."[35]  With all due respect for the nicely reasoned opinion in Ramos, we find ourselves unable to embrace an interpretation that results in convicting a person under § 922(g) who has never lost his civil rights and who is not prohibited by the state from possessing a gun while simultaneously immunizing from such a conviction one who was stripped of his civil rights, including gun possession, but has subsequently had them affirmatively "restored."  We are simply unwilling to pass through the looking glass into such a Wonderland, when, as here, we are not absolutely forced to do so.

For purposes of the instant case, the operative words of § 921(a)(20) provide:  "Any conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter . . . ."  We are convinced that if, upon release from prison, the suspension of a convicted felon's rights to, inter alia, vote, hold public office, and sit on a jury evaporates ipso facto, simply because he or she ceases to be in custody or on probation, such felon's civil rights have been restored for purposes of § 921(a)(20).  Simply because those rights are reinstated automatically by operation of law, they are no less "restored" than are such rights that have been resurrected by an "affirmative act" of the state.

Remaining faithful to the Ninth Circuit's two-step approach, when henceforth we find that the state which obtained the underlying conviction revives essentially all civil rights of

---

[35] Id.

14

convicted felons, whether affirmatively with individualized certification <u>or</u> passively with automatic reinstatement, we shall then determine whether the defendant was nevertheless <u>expressly</u> deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction. To determine whether such a state's law does or does not "expressly provide[] that a person may not ship, transport, possess, or receive firearms," in the case of an affirmative or active restoration (with certificate), we shall cleave to the reasoning of the Seventh Circuit in its <u>Erwin</u> opinion, for we agree that

> [i]f the state sends the felon a piece of paper [or certificate] implying that he is no longer "convicted" and that <u>all</u> civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon that [firearms] are not kosher.[36]

In the case of passive (or automatic) restoration of civil rights, however, we cannot disabuse ourselves of some nagging concerns with the Seventh Circuit's reasoning. In <u>Erwin</u>, that court stated:

> When, however, the state sends no document granting pardon or restoring rights, there is no potential for deception, and the question becomes whether the particular civil right to carry guns has been restored by law.[37]

The court in <u>Erwin</u> went on to hold that, in the case of passive restoration of civil rights, "the language [restricting the felon's right to possess firearms] is no less express when codified [in a

---

[36] <u>Erwin</u>, 902 F.2d at 512-13.

[37] <u>Id</u>. at 513 (citing <u>United States v. Kolter</u>, 849 F.2d 541 (11th Cir. 1988)).

different part of the state's statutes than the restoration]."[38] Were such a fact situation before us today we would find this expansive reasoning from Erwin difficult to square with that unambiguous language of § 921(a)(20), which declares that a conviction for which a person had civil rights restored cannot serve as the predicate for a conviction under § 922(g) "unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."[39] But as this issue clearly is not precisely before us, we shall neither accept nor reject this part of the Erwin decision, pretermitting a holding on this facet of that opinion until the time in the future when this court must take a position on it, one way or the other, in order to decide the case then before it.

2.  Thomas and Texas Law

Thomas insists that his civil rights were "restored" by operation of Texas law.  He argues that, as Texas does not deny non-violent felons the right to possess firearms following release from custody, his civil rights were restored for purposes of § 921(a)(20).  We disagree.  Thomas confuses the specific non-prohibition of possession of a firearm with the general restoration of all or essentially all civil rights.  In their briefs to this

---

[38] Id.  The court reasoned that West Publishing, not the State of Illinois, actually "codified" state laws, and that it simply does not matter in the case of a passive restoration where West places the statute that restricts the felon's ability to possess a firearm.

[39] 18 U.S.C. § 921(a)(20) (emphasis added).

court, neither party discussed Texas's rules concerning a convicted felon's right to vote, hold public office, or serve on a jury; nor did they discuss generalized restoration of civil rights under Texas law. Nevertheless, our independent research reveals that Texas neither actively nor passively restores all or essentially all of the civil rights of criminals))even non-violent felons))upon release from jail.[40] We find instead that Texas law provides for neither the passive, automatic reinstatement of all civil rights (as Minnesota was represented to do during the debate on the bill that was passed as FOPA[41]) nor the active or affirmative revival of such rights by issuance of a certificate of restoration of all civil rights of convicted felons following release from custody and completion of probation (as does North Carolina[42]).

We also find that Texas does not restore to any felon, whether violent or non-violent, the three civil rights considered key by

---

[40] The current provisions of Texas law that regulate the information contained in the release given to departing prisoners do not mandate any broad restoration of rights. See TEX. GOV'T CODE ANN. § 501.016 (West 1990 & Supp. 1993). Neither did the Texas provisions in effect when Thomas was released from prison in 1959 contain such broad provisions. See TEX. REV. CIV. STAT. ANN. art. 6166z1 historical note (West 1970 & Supp. 1993). Compare N.C. GEN. STAT. §§ 13-1, 13-2 (1986), cited and discussed in Essick, 935 F.2d at 30.

[41] See Cassidy, 899 F.2d at 548-49 (quoting and discussing the comments of Senator Durenberger, 132 Cong. Rec. S14,974 (daily ed. Oct. 3, 1986)).

[42] Essick, 935 F.2d at 30; see Kolter, 849 F.2d at 541-42 (holding, inter alia, that as the Georgia board of pardons and paroles had "unqualifiedly restored all the civil and political rights Kolter had lost as a result of [his conviction]," presumably under statute or by certificate, his rights had been restored for § 921(a)(20) purposes).

17

the Ninth and Sixth Circuits))the rights to vote,[43] hold public office,[44] and serve on a jury.[45]  For purposes of the instant inquiry, then, Texas (and therefore Thomas) fails to meet muster under any of the approaches of the several circuits that have addressed the concept of <u>restoration</u> of <u>civil rights</u> as contemplated in § 921(a)(20).

It is certainly true, as Thomas contends, that Texas does not prohibit possession of firearms by persons convicted of non-violent felonies.  The sole prohibition of firearms possession by felons applies only to persons convicted of <u>violent</u> felonies; and even they may possess firearms within their own residences.[46]  It does not follow, though, that Texas's failure to deny Thomas the right to possess firearms is the functional equivalent of restoring his civil rights.  Such an interpretation simply runs counter to any court-approved reading of § 921(a)(20).

That statute, as we have noted, provides that

> [a]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a

---

[43] <u>See</u> TEX. ELEC. CODE ANN. §§ 11.002(4)(A), 13.001(A)(4)(A) (SUPP. 1993).

[44] <u>See</u> TEX. ELEC. CODE ANN. § 141.001(4) (WEST 1986).

[45] <u>See</u> TEX. GOV'T CODE ANN. § 62.102 (West 1988).

[46] The relevant part of the Texas penal code provides:
**§ 46.05.  Unlawful Possession of Firearm by Felon**
   (a) A person who has been convicted of a felony involving an act of violence or threatened violence to a person or property commits an offense if he possesses a firearm away from the premises where he lives.
   (b) An offense under this section is a felony of the third degree.
TEX. PENAL CODE ANN. (West 1989).

18

> conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.[47]

The circumstance presented by the instant case is precisely the opposite of the one described in the statute: In the absence of the restoration of essentially all civil rights of the convicted felon as defined for purposes of § 921(a)(20), the felon's isolated right to possess a firearm is of no import whatsoever. In other words, even though a generalized restoration of the felon's core civil rights, such as voting, holding public office, and serving as a juror, insulates the felon from guilt under § 922(g)(1) by virtue of § 921(a)(20) if (but only if) the state in question does not expressly prohibit gun possession, the converse does not follow. The isolated right to possess firearms, in the absence of restoration of such core civil rights as well, does not immunize convicted felons from § 922(g) guilt. If the felon has not "had civil rights restored," it simply does not matter what the state law provides concerning possession of firearms. Therefore, only if we had found that Texas did restore Thomas's civil rights would we have needed to determine whether Texas expressly prohibited him from possessing firearms.

We recognize that both the Gomez interpretation by the Ninth Circuit, which (in combination with the teachings of Erwin) we adopt today, and the Ramos interpretation by the First Circuit can lead to anomalous results and to a considerable lack of uniformity,

---

[47] 18 U.S.C. § 921(a)(20).

depending on the purely fortuitous fact of which jurisdiction among the fifty states obtained the predicate conviction under examination.  Actual or potential aberrant results, however, do not excuse reading (or writing) anything into or out of a statute that Congress has so consciously adopted.

We recognize also that the result produced here, by our following of the Gomez/Erwin approach, could be seen as running counter to some of the legislative history of FOPA.  For example, Senator Hatch, speaking in favor of FOPA, asserted that "S.49 grants authority to the jurisdiction (State) which prosecuted the individual to determine eligibility for firearm possession after a felony conviction or plea of guilty to a felony."[48]  One could fairly argue that, given the Texas legislature's determination that ))even without having their civil rights restored))violent felons should be allowed to possess firearms in their homes and non-violent felons should be allowed to possess firearms without any restrictions (unmistakably the effect of § 46.05 of the Texas Penal Code), the federal government should not impose its own stricter crime of felon in possession of a firearm.  In writing §

_____

[48] 99th Cong., 1st Sess., 131 Cong. Rec. S8,689 (daily ed. June 24, 1985), quoted in Cassidy, 899 F.2d at 549 n.11.  Justice Scalia, continuing his attack on what he views as needless citation to legislative history, has recently reminded the courts that just about any interpretation of an act can be supported with a quote from the legislative history.  See Conroy v. Aniskoff, 113 S. Ct. 1562, 1567-72 (1993)(concurring in the judgment).  We note that, though the application of our interpretation of the statute to different states' laws will produce anomalous results, those results could not be considered "manifestly unintended [or] profoundly unwise."  See id. at 1567 n.12 (majority opinion).

20

921(a)(20), however, Congress did not speak in terms of "if the State allows possession of firearms by a convicted felon, we shall not make it a crime." Rather, Congress employed the terms "civil rights" in a manner that eschews any possibility of equating the narrow concept of a state's non-prohibition of firearm possession with the infinitely broader concept of restoration of civil rights. We agree entirely with the conclusions of the Sixth and Ninth Circuits that "civil rights," as used in § 921(a)(20), must mean much more than simply the single, narrow right to possess a firearm.


III

CONCLUSION

Thomas's argument))that, as Texas does not prohibit the possession of a firearm by one convicted of a non-violent felony, his civil rights have been "restored" for purposes of § 921(a)(20))) fails. Under our reading of FOPA, Texas neither actively nor passively restores the civil rights of persons convicted of such felonies merely by permitting them to possess firearms or by not declaring their possession of firearms to be unlawful. Thomas therefore gets no benefit from the applicable provisions of § 921(a)(20).

Thomas's other claim))that he was vindictively prosecuted))is raised for the first time on appeal and is tested for plain error only. This claim is evidenced by nothing more than the bald fact that the government increased the number of firearms counts brought

against him from one in the original indictment to four in the second indictment.  Thomas has presented no material evidence of vindictiveness in connection with his re-indictment; neither has he demonstrated that a manifest injustice would result here.  Without more, this claim also fails))there is no plain error.

For the foregoing reasons, Thomas's conviction and sentence are

AFFIRMED.