UNITED STATES of America

v.

Gary August DUPAQUIER.

Crim. No. 94–3–B.

United States District Court,
M.D. Louisiana.

Feb. 24, 1995.

P.R. Lamonica, U.S. Atty., Robert Piedr-ahita, Asst. U.S. Atty., Baton Rouge, LA, for the U.S.

Anthony Clark Caruso, Baton Rouge, LA, for defendant.

## RULING ON DEFENDANT'S MOTION FOR ACQUITTAL

POLOZOLA, District Judge.

Gary August Dupaquier has filed a motion for a post-verdict judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. For reasons which follow, the motion is denied.

### I. Background Information

The grand jury for the Middle District of Louisiana returned a three count indictment against the defendant charging him with the following crimes: Count One—possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); Count Two—using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and Count Three—possession of unregistered silencers in violation of 26 U.S.C. § 5861(d). Following a jury trial,

the defendant was found guilty on all three counts.

At the close of the evidence, the defendant moved for a judgement of acquittal on Count One of the indictment. Defendant contended that the underlying state court felony conviction could not be considered because the provisions of Article 1, Section 20 of the Louisiana Constitution restored his right to possess a gun. For oral reasons assigned, the Court denied the motion for a judgment of acquittal.

Following his conviction, the defendant timely filed a post-verdict motion for a judgment of acquittal. The defendant again challenges his conviction on Count One (felon in possession of a firearm) for the same reasons set forth in his original motion for a judgment of acquittal. Defendant also contends that the evidence fails to support his conviction on Counts Two and Three.

The United States has filed an opposition to the defendant's motion. The government contends that Louisiana law did not automatically restore all of the defendant's civil rights, including the right to possess a firearm. The government also contends that the evidence fully supports a conviction on Counts Two and Three of the indictment.

## II. The Validity of Defendant's Conviction Under 18 U.S.C. § 922(g)

Gary Dupaquier seeks a judgment of acquittal on Count One of the indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C.

§ 922(g).[1] To properly decide this motion, the Court must construe two provisions of 18 U.S.C. § 921(a)(20) (part of the federal firearm statutes). This section provides:

> What constitutes a conviction of such a crime [i.e. a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held [known as the choice-of-law clause]. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms [known as the exemption clause].[2]

In *Beecham v. United States*,[3] the United States Supreme Court, after concluding that the above two provisions were related and must be construed together, held that a court must look to the law of the jurisdiction in which the underlying conviction was obtained in order to decide whether the defendant's rights were restored so as to preclude prosecution under 18 U.S.C. § 922(g).[4]

Following the rule set forth in *Beecham*, this Court must look to Louisiana law to decide whether and to what extent Dupaquier's civil rights have been restored. In deciding this issue, the Court must also apply the standard established in *United States v.*

---

1. 18 U.S.C. § 922(g) states in relevant part:

   It shall be unlawful for any person—
   (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

   .     .     .     .     .

   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(g) (1994).

2. 18 U.S.C. § 921(a)(20) (1994).

3. —— U.S. ——, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994).

4. The Supreme Court explained the interaction between sections 921(a)(20) and 922(g) of 18 U.S.C. as follows:

   Section 922(g) imposes a disability on people "who ha[ve] been convicted." The choice-of-law clause [of Section 921(a)(20)] defines the rule for determining "[w]hat constitutes a conviction." The exemption clause [of Section 921(a)(20)] says that a conviction for which a person has had civil rights restored "shall not be considered a conviction." Asking whether a person has had civil rights restored is thus just one step in determining whether something should "be considered a conviction." By the terms of the choice-of-law clause, this determination is governed by the law of the convicting jurisdiction. *Beecham*, —— U.S. at ——, 114 S.Ct. at 1671.

*Thomas,*[5] wherein the Fifth Circuit adopted a two-part test to determine whether a defendant's civil rights had been restored within the meaning of 18 U.S.C. 921(a)(20) so that the defendant is not subject to prosecution under 18 U.S.C. § 922(g).[6] The first inquiry under *Thomas* is to determine whether "the state which obtained the underlying conviction revives essentially all civil rights of convicted felons" either affirmatively for an individual defendant or automatically by law.[7] Upon such a finding, the Court must then decide whether the state nevertheless expressly deprived the defendant of the right to possess a firearm.[8]

### A. Part One: Restoration of Civil Rights—What Civil Rights Does Louisiana Restore to Convicted Felons

■ The first part of the *Thomas* test requires the Court to determine whether Louisiana, which is the jurisdiction of the underlying conviction, "restores the civil rights" of convicted felons. In *Thomas,* the Fifth Circuit initially had to determine the meaning of the operative words "has had civil rights restored" found in section 921(a)(20). The court concluded

> that if, upon release from prison, the suspension of a convicted felon's rights to, inter alia, vote, hold public office, and sit on a jury evaporates ipso facto, simply because he or she ceases to be in custody or on probation, such felon's civil rights have been restored for purposes of § 920(a)(20).[9]

The defendant contends that his right to possess a firearm was automatically restored ten years after he completed his sentence and parole pursuant to the provisions of Article 1, Section 20 of the Louisiana Constitution and, therefore, his underlying state court conviction cannot be used in this federal prosecution. Article 1, Section 20 of the Louisiana Constitution provides that "[f]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."[10] Thus, the Court must determine whether the rights of citizenship restored under Article 1, Section 20 meet the Fifth Circuit's definition in *Thomas* to preclude a conviction under 18 U.S.C. § 922(g). In making this determination, it is necessary for the Court to decide which, if any, civil rights are restored under Article 1, Section 20 of the Louisiana Constitution.

#### 1. Louisiana Jurisprudence

On at least three occasions, the Louisiana Supreme Court has been required to interpret the meaning of Article 1, Section 20 in the context of constitutional challenges to other statutory provisions. These cases provide great assistance to this Court in determining how the Louisiana restoration of rights provision must be applied in connection with the *Thomas* test.

The Louisiana Supreme Court first considered the applicability of Article 1, Section 20 in *State v. Amos,*[11] wherein the court rejected the defendants' arguments that the Legislature was precluded from limiting or regulating their right to own or possess a gun because they had served their sentences. After noting that the "right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute," the court stated:

> We have recognized that such rights may be regulated in order to protect the public health, safety, morals or general welfare so long as that regulation is a reasonable one.... It is beyond question that the statute challenged in the instant case was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by

---

**5.** 991 F.2d 206 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993).

**6.** *Thomas,* 991 F.2d at 213; *see also United States v. Gomez,* 911 F.2d 219 (9th Cir.1990).

**7.** *Thomas,* 991 F.2d at 213.

**8.** *Thomas,* 991 F.2d at 213.

**9.** *Thomas,* 991 F.2d at 212–13.

**10.** La. Const. art. I, § 20.

**11.** 343 So.2d 166 (La.1977).

their past commission of certain serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.

To be sure, La.R.S. 14:95.1 is addressed to persons who are citizens of this state by virtue of having terminated state and federal supervision following their convictions. La. Const. art. 1, § 20 (1974). These persons have, nonetheless, previously been convicted of serious criminal offenses; restoration of citizenship cannot erase this fact. The verbatim transcripts of the constitutional convention debates indicate that neither La. Const. art. 1, § 11 nor La. Const. art. 1, § 20 were ever intended to preclude the type of legislation disputed herein.[12]

Shortly after rendering its decision in *Amos,* the Louisiana Supreme Court decided *State v. Selmon.*[13] In that case, the court had to determine whether Article 1, Section 20 precluded the state from using the defendant's prior conviction to enhance the defendant's sentence under Louisiana's habitual offender law.[14] The court again focused on the transcripts from the constitutional debates to support its holding that Article 1, Section 20 was not meant to prevent the use of past convictions to enhance penalties under the habitual offender law.[15] In an unanimous opinion, the Louisiana Supreme Court held:

> The constitutional debates on this section support the conclusion that the habitual offender laws were not rendered unconstitutional by the adoption of this provision. As originally proposed the section provided that "full rights" be restored. However, this original wording precipitated debates on whether the broad language would affect the applicability of multiple offender laws. The debates reveal that the ultimate

language, "rights of citizenship," was adopted to make it clear that the drafters' intent was to restore the customary rights a citizen may exercise (the rights to vote, work, hold public office, etc.) and not to automatically erase the *fact* of the conviction.[16]

In *State v. Wiggins,*[17] the Louisiana Supreme Court reviewed its decisions in *Amos* and *Selmon* and held that Article 4, section 5(E)(1) of the Louisiana Constitution, which provides for an automatic pardon for a first offender upon completion of sentence, did not preclude the state from charging the defendant with being a felon in possession of a firearm. The court held:

> Having previously held in *Amos* that La. R.S. 14:95.1 does not impermissibly contravene the right to keep and bear arms under La. Const. art. 1, § 11 despite restoration of "[f]ull rights of citizenship" upon termination of state and federal supervision following conviction of any offense under La. Const. art. 1, § 20, we perceive of no reason why La.R.S. 14:95.1 should not equally apply to a person who has been automatically pardoned under La. Const. art. 4, § 5(E)(1) for a prior first felony conviction and restored "all rights of citizenship" under La.R.S. 15:572(D). We must bear in mind that La. Const. art. 4, § 5(E)(1) only provides for an automatic pardon for a first felony offender. It is La.R.S. 15:572(D) that provides for restoration of "all rights of citizenship." Surely, the legislature has the authority under its police power to limit the "rights of citizenship" restored by an automatic pardon by the provisions of La.R.S. 14:95.1.[18]

At least one Louisiana court has also decided the issue of whether the rights restored by Article 1, Section 20 include the right for a convicted felon to serve on a

---

**12.** *Amos,* 343 So.2d at 169 (certain citations omitted). In a footnote, the Louisiana Supreme Court referenced the verbatim transcripts of two days of debates from the Constitutional Convention of 1973. *See Amos,* 343 So.2d at 168 n. 1.

**13.** 343 So.2d 720 (La.1977).

**14.** *See* La.Rev Stat Ann. § 15:529.1 (West 1992 & Supp.1995).

**15.** *Selmon,* 343 So.2d at 722.

**16.** *Selmon,* 343 So.2d at 722 (citations omitted) (emphasis original).

**17.** 432 So.2d 234 (La.1983).

**18.** *Wiggins,* 432 So.2d at 237.

jury.[19] In *State v. Haynes*,[20] the Louisiana Second Circuit Court of Appeal considered a constitutional attack on Article 401 of the Louisiana Code of Criminal Procedure. That article lists the qualifications for a person to serve as a juror in Louisiana courts, one of which is that a person must "[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned."[21] In *Haynes*, a juror had been excluded because of a felony conviction which had occurred over twenty-five years before trial, and the defendant argued that this exclusion was unconstitutional under Article 1, Section 20 of the Louisiana Constitution. The court held that Article 401 was not unconstitutional, citing Article 5, section 33 of the Louisiana Constitution which allows the legislature to provide for qualifications of jurors.[22] The court also noted that Article 1, section 20 only restores those rights basic to citizenship, "such as the right to vote, work, or hold public office."[23]

### 2. 1973 Constitutional Convention Debates

The verbatim transcripts of the 1973 Constitutional Convention debates also clearly support a finding that the delegates to the convention did not intend for a convicted felon to automatically be granted the right to carry or possess a firearm. Indicative of the drafters' intent in this regard is the following passage where delegate Gravel stated:

> Let me make sure there is no misunderstanding about what this particular amendment does. All it does, and I think Mr. Derbes has already said it, but I think it needs to be said again, is to say that after a person has served his time in the penitentiary or in jail, or after he has served his period of probation and/or parole, after, so to speak, his debt fully to society has been paid, society will then say, "Okay, we're going to restore to you a couple of

limited rights, the rights that you, as a citizen have, and that is the right to vote and the right to hold a job, let's say with the state, or to run for office. It doesn't do anymore than that. It doesn't say that you can't be prosecuted as a second, third, fourth, or fifth offender in the future if you commit other offenses. It doesn't say that you are pardoned for the crime you have committed and that your slate has been wiped clean. It simply says that we're going to give you back the minimum things that have been taken from you because you have earned them."[24]

Other delegates made similar remarks as the following exchange which occurred during the debates demonstrates:

> *Mr. Derbes* Ladies and Gentlemen, I give you an opportunity to do in clear and concise terms what I feel the committee's original intention was. That is to restore to individual convicted persons, after they have discharged all of their obligations to society, two basic rights of citizenship. One, the right to vote, and two, the right to work. That is the right of employment and the right to hold office which are now denied to them....

> *Mr. Duval* Jim, do you know this is a friendly question? This wouldn't prevent the right of the state to bring an habitual offender charge in the second offense, would it?

> *Mr. Derbes* Absolutely not, it has nothing, in my opinion, to do with the conduct of trials for multiple offenders, the sentencing of multiple offenders, the probation and parole of multiple offenders.

> *Mr. Arnette* Jim, this is just for information—for my own information. The full rights of citizenship would just entail things like the right to vote, possibly the right to hold office and things of this nature, the right to work?

---

**19.** As mentioned above, the right to serve on a jury was one of the three rights the Fifth Circuit listed in its determination of whether the state restoration of rights provision satisfies its interpretation of section 921(a)(20) in *Thomas*.

**20.** 514 So.2d 1206 (La.App.2d Cir.1987).

**21.** LA.CODE CRIM.PROC ANN. art. 401 (West 1991).

**22.** *Haynes*, 514 So.2d at 1211.

**23.** *Haynes*, 514 So.2d at 1211.

**24.** RECORD OF THE LOUISIANA CONSTITUTIONAL CONVENTION OF 1973: CONVENTION TRANSCRIPTS, vol. XIV, at 60–61.

*Mr. Derbes* Exactly, precisely, nothing more than that.

*Mr. Arnette* It would not prevent the legislature from say, passing a law that a convicted felon could not carry a weapon. . . .

*Mr. Derbes* Absolutely not.[25]

In his scholarly article entitled *The Declaration of Rights of the Louisiana Constitution of 1974,* Professor Lee Hargrave noted:

An important addition is the last sentence: "Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction of any offense." The committee had proposed that "full rights" be restored, but an amendment changed this to "full rights of citizenship." The change followed a debate concerned with the applicability of multiple offender laws and their enhanced punishments to persons who had completed their sentences. The committee's intent was that restoration of full *rights* would not automatically erase the *fact* of a conviction, and thus multiple offender legislation would be permitted under its proposal. However, to clarify this position, Delegate James Derbes submitted the amendment to change the language to the more limited expression ultimately adopted and thus suggest that multiple offender laws would not be invalidated.

In fact, in Derbes' view, his wording would not prevent adoption of legislation prohibiting the carrying of weapons by convicted felons or restricting the issuances of liquor licenses to persons who had been convicted of an offense. He explained that he had in mind restoration of basic rights of citizenship, such as the rights to vote, to work, to hold office and to be employed by the state.[26]

### 3. Discussion

In light of the Louisiana courts' interpretation of Article 1, Section 20 and the 1973 Constitution Convention debates, the Court holds that the restoration of the rights of citizenship given by the Louisiana Constitution is not the same as that restoration of rights referred to in 18 U.S.C. § 921(a)(20). As previously observed, a convicted felon in Louisiana who has served his sentence cannot serve as a juror in the Louisiana courts. Jury service is one of the three rights the Fifth Circuit recognized in the first part of the *Thomas* test in determining whether the defendant's civil rights have been restored within the meaning of section 921(a)(20). Additionally, it is also apparent that the Louisiana Supreme Court and the Second Circuit Court of Appeal read Article 1, Section 20 as restoring a very limited number of rights to convicted felons—i.e. the right to vote, to work and to hold public office. In no instance has any Louisiana court found that Article 1, section 20 expressly or impliedly grants a convicted felon the right to possess a firearm.

### B. Part Two: State Deprivation of the Right of Convicted Felons to Possess Firearms

Upon concluding that the state which obtained the underlying conviction did restore some rights to the convicted felon after completion of sentence, the *Thomas* decision then requires a court to determine "whether the defendant was nevertheless *expressly* deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction."[27] The provision restricting a convicted felon's right to possess firearms in Louisiana is found in Louisiana Revised Statutes 14:95.1.[28] As noted earlier in this opinion,

---

**25.** Record of the Louisiana Constitutional Convention of 1973: Convention Transcripts, vol. XIV, at 57–58.

**26.** L. Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974,* 35 La.L.Rev. 1, 63–64 (1974) (emphasis original).

**27.** *United States v. Thomas,* 991 F.2d 206 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993) (emphasis original). Al-

though the Court has determined in Part One of this opinion that Louisiana did not restore the defendant's right to possess a firearm, in the alternative, the Court will analyze the second prong of the *Thomas* test.

**28.** Louisiana Revised Statutes 14:95.1 states in part:

A. It is unlawful for any person who has been convicted of [certain enumerated felo-

this provision has been held constitutional in *State v. Amos.*[29]

The *Amos* decision makes it clear that: (1) restoration of rights in Louisiana is limited, particularly with respect to the possession of firearms, and (2) Louisiana courts do not regard the right to bear arms as set forth in the Louisiana Constitution as an absolute right given to citizens, much less previously convicted felons.[30] The right to bear arms is subject to limitations by the state in the interest of the public welfare and safety.[31] These limitations on the right of a convicted felon to possess firearms are required under the *Thomas* test to allow the United States to prosecute Dupaquier under 18 U.S.C. § 922(g).

The *Thomas* opinion makes a distinction where the state restores the civil rights of convicted felons affirmatively (by sending a certificate to the defendant after he has served his sentence) from those instances where the convicted felon's civil rights are passively restored with automatic reinstatement. Consequently, the language in section 921(a)(20) which requires that there be an "express" restriction in the provision restoring the convicted felon's civil rights to allow prosecution under section 922(g) has caused some confusion.

With affirmative reinstatement, the convicted felon is not subject to prosecution under 18 U.S.C. § 922(g) if the state has a "reservation [as to his right to possess firearms] in a corner of the state's penal code."[32] In the case of automatic or passive restoration (i.e. the convicted felon is not given direct notice by a certificate), the Fifth Circuit has chosen not to follow the Seventh Circuit's opinion in *United States v. Erwin*[33] which has held that there is no potential for deception when the restriction on firearms is not found in the same section of the state's laws as the restoration provision.[34] However, the Fifth Circuit in *Thomas* left unresolved how "express" the limitation on possession of firearms must be to allow prosecution under 18 U.S.C. § 922(g). In this case, the Louisiana courts have held long before Dupaquier was charged with the federal offense that Article 1, section 20 of the Louisiana Constitution did not expressly or impliedly permit a convicted felon to possess a firearm. Furthermore, Dupaquier was given a written document upon his release from prison which advised him he was not permitted to possess or own a firearm.

### III. Conclusion

For reasons set forth above, the court finds that Dupaquier can be prosecuted for a

---

nies], or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.

C. Except as otherwise specifically provided, this Section shall not apply to the following cases:

(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

(2) Upon completion of sentence, probation, parole, or suspension of sentence the convicted felon shall have the right to apply to the sheriff of the parish in which he resides, or in the case of Orleans Parish the superintendent of police, for a permit to possess firearms. The felon shall be entitled to possess firearms upon the issuing of the permit. La.Rev.Stat Ann. § 14:95.1 (West 1986 & Supp.1995).

**29.** 343 So.2d 166 (La.1977).

**30.** *See also State v. Wiggins*, 432 So.2d 234 (La. 1983) (holding that Article 1, Section 20 (restoration of rights) and Article 1, Section 11 (right to bear arms), read in conjunction with Article 4, Section 5(E)(1) (providing for an automatic pardon for first time felony convictions), do not preclude prosecution under La.Rev.Stat.Ann. § 14:95.1).

**31.** *See United States v. Crochet*, 788 F.2d 1061, 1062 (5th Cir.1986) (stating that the purpose of 18 U.S.C. 922(g) is "to prohibit the possession of firearms by those whom Congress considers 'unreliab[le].'").

**32.** *U.S. v. Thomas*, 991 F.2d 206 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993) (quoting *U.S. v. Erwin*, 902 F.2d 510, 512–13 (7th Cir.), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990)).

**33.** 902 F.2d 510 (7th Cir.), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990).

**34.** *Thomas*, 991 F.2d at 213.

violation of 18 U.S.C. § 922(g) under the first part of the *Thomas* test because the Louisiana restoration of rights provision does not restore the broad rights contemplated by Congress under 18 U.S.C. § 921(a)(20).

Under part two of the *Thomas* test, the provision restoring civil rights to convicted felons in Louisiana is passive or automatic because it is found in the Louisiana Constitution and is not stated in some certificate issued to the convicted felon after he has completed his sentence. Furthermore, since there was an express restriction on Dupaquier's release form as to possession of firearms, this express limitation coupled with a passive restoration of rights clearly satisfies the *Thomas* test. Therefore, the court finds that there was no legal or factual bar to the defendant being prosecuted under the federal statute. Defendant's post verdict motion for judgment of acquittal on this ground is therefore denied.

Defendant's motion also seeks a judgment of acquittal insofar as count two is concerned for the same reasons set forth in his motion for a judgment of acquittal on count one. This motion is without merit for the reasons previously given.

■ The court will, in the interest of justice, also construe defendant's motion for a judgment of acquittal on all counts to be one based on the insufficiency of the evidence. In order for this Court to set aside a verdict based on the weight and credibility of the evidence, the Court must find that the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. The Court finds that the defendant has failed to meet this burden. In fact, it would be a miscarriage of justice to reverse the conviction because of the overwhelming evidence of guilt presented at the trial of this case.

Therefore, the defendant's motion for a post-verdict judgment of acquittal is DENIED. Judgment shall be entered accordingly.