IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-30068
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY AUGUST DUPAQUIER,

Defendant-Appellant,

_____
Appeal from the United States District Court
for the Middle District of Louisiana

_____

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER,[*]
District Judge.

SCHWARZER, District Judge:

Defendant Gary Dupaquier was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988), using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Supp. II 1990), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1988). He now appeals his convictions and sentences on all three counts. We reverse Dupaquier's count one conviction, affirm his count two and count three convictions, vacate his sentences and remand for resentencing.

I.  FACTS AND PROCEDURAL HISTORY

_____

    * District Judge of the Northern District of California, sitting by designation.

Prior to the arrest leading to the convictions challenged here, Dupaquier was convicted in Louisiana state court of burglary and possession of controlled substances with intent to distribute. Based on those convictions, Dupaquier was sentenced in 1979 to a term of five years at hard labor. In July 1980, he was discharged from state custody.

In August 1990, Dupaquier was arrested by Louisiana authorities and charged with possession of firearms by a convicted felon, possession of cocaine with intent to distribute, and possession of unregistered firearms. Pursuant to a plea bargain, Dupaquier entered a plea of nolo contendere to the charge of possession with intent to distribute and was sentenced to ten years' imprisonment at hard labor. The other charges were dropped and Dupaguier is currently serving his ten-year sentence.

Based on the same conduct for which he was arrested in 1990 by state authorities, Dupaquier was indicted in January 1994 by a federal grand jury and charged with possession of a firearm in violation of 18 U.S.C. section 922(g)(1), using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. section 924(c)(1), and possession of a firearm in violation of 18 U.S.C. section 5861(d). According to the indictment, all three offenses occurred on or about August 8, 1990. Following a trial, Dupaquier was convicted on all three counts. Pursuant to Fed. R. Crim. P. 29, he filed a motion for judgment of acquittal on counts one and two, which the court denied. Dupaquier was then sentenced to 240 months on count one,

less 51 months' credit for time served in state prison, a concurrent term of 36 months on count three, and a consecutive term of 60 months on count two. He now appeals his conviction and sentence on all counts. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. section 1291 and 18 U.S.C. section 3742(a).

## II. DISCUSSION

A. <u>Dupaquier's Conviction Under § 922(g)(1)</u>

Count one charged Dupaquier with violation of 18 U.S.C. section 922(g)(1) which makes it "unlawful for any person -- (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to possess in or affecting commerce, any firearm . . . ." Dupaquier challenges his conviction on count one on the ground that he was not "convicted" within the meaning of section 922(g)(1). Dupaquier does not deny the fact of the predicate convictions upon which the prosecution was based. He contends, however, that his civil rights were restored by state law prior to his arrest in 1990; thus pursuant to 18 U.S.C. 921(a)(20) (1988), he was not a convicted felon for the purposes of section 922(g)(1). Because the issue Dupaquier raises is purely a question of law, our review is plenary. <u>United States v. Thomas</u>, 991 F.2d 206, 209 (5th Cir.), <u>cert. denied</u>, 114 S. Ct. 607 (1993).

Enacted "to give federal effect to state statutes that fully 'restore' the civil rights of convicted felons where they are released from prison . . . .," section 921(a)(20) defines conviction of a crime for purposes of section 922(g)(1). <u>Thomas</u>,

-3-

991 F.2d at 209.  Section 921(a)(20) provides that

> [w]hat constitutes a conviction of such crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction . . . for which a person has . . . had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not . . . possess . . . firearms.

Thus, we look to Louisiana law to determine whether Dupaquier was a convicted felon for purposes of 922(g)(1).  See Beecham v. United States, 114 S. Ct. 1669, 1671 (1994).  Specifically, we look to Louisiana law to determine whether Dupaquier's civil rights were restored prior to his arrest.  If his rights had been restored under Louisiana law, his conviction on count one must be reversed.

To determine whether a convicted felon's rights were "restored" under section 921(a)(20), this court has adopted a two-part test:  We first ask whether "the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification or passively with automatic reinstatement . . . ."  Thomas, 991 F.2d at 213.  If so, we "then determine whether the defendant was nevertheless expressly deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction."  Id.

Thus, we begin by asking whether Louisiana revived, either passively or actively, essentially all of Dupaquier's civil rights.  Article I, Section 20, of the Louisiana Constitution provides that "[f]ull rights of citizenship shall be restored upon termination of

state and federal supervision following conviction for any offense." Under the plain language of the Constitution, therefore, Dupaquier's civil rights were fully restored upon his discharge from custody.

The district court concluded, however, and the government now argues, that Dupaquier's civil rights were not restored within the meaning of section 921(a)(20) because the Louisiana legislature has barred convicted felons who have not been pardoned from serving on juries. See La. Code Crim. Proc. Ann. art. 401(A)(5) (West Supp. 1990) (amended 1984). In support of that argument, the district court and the government have cited our decision in Thomas for the proposition that state law must restore three key rights--the right to vote, the right to hold public office, and the right to serve on a jury--in order for a felon's rights to be restored within the meaning of section 921(a)(20). That, however, is a faulty reading of Thomas.

In Thomas, we did not treat the restoration of the three key civil rights as the sine qua non of the restoration of a felon's rights under section 921(a)(20). Instead, to determine whether state law had restored all or essentially all of Thomas' civil rights, we first looked to whether Texas law provided a generalized restoration of a felon's civil rights. See Thomas, 991 F.2d at 214. Only after finding that "Texas neither actively nor passively restores all or essentially all of the civil rights of criminals" did we look to whether Texas restored to a felon "the three civil rights considered key by the Ninth and Sixth Circuits--the right to

-5-

vote, hold public office, and serve on a jury." Having found that Texas provided neither a general restoration of a felon's civil rights nor a restoration of the three key rights, we held that Thomas had not had his civil rights restored within the meaning of section 921(a)(20) and was therefore a convicted felon for purposes of 922(g).

Consistent with our analysis in Thomas, where, as here, a state's constitution declares full rights of citizenship to be restored upon a convicted felon's release from custody, we need not look further to determine that the restoration satisfies section 921(a)(20). That the legislature has barred felons from serving on juries is not inconsistent with that conclusion. The exercise of the legislature's power to establish qualifications for jurors cannot be read as qualifying the plain language of the state's constitution restoring "essentially all" of a discharged felon's civil rights.

Having found that the Louisiana Constitution restored essentially all of Dupaquier's civil rights, we go to step two and ask whether state law nevertheless deprived Dupaquier of the right to possess a firearm. Under La. Rev. Stat. Ann. section 14:95.1 (West 1986), it is unlawful for a convicted felon to possess a firearm until ten years after the date of completion of his sentence. Thus, possession of a firearm became lawful for Dupaquier after July 14, 1990. The conduct out of which the instant charges arose occurred on or about August 8, 1990; Dupaquier was not at that time deprived of his right to possess a

-6-

firearm.

The government notes that, at the time Dupaquier received his certificate of discharge from state prison, Dupaquier was also given an untitled and unsigned document, which he was required to sign, stating that "[t]his does not constitute a full pardon and restoration of citizenship, and this does not entitle you to buy, receive or possess firearms." This document of uncertain provenance cannot, of course, qualify the restoration of citizenship provided for in the Louisiana Constitution; nor can it extend the time period during which Dupaquier was prohibited by statute from possessing a firearm. Indeed, the certificate points to no authority that would give it any legal effect. Instead, the certificate merely provides a felon with notice that he has been officially released from state custody and apprises him of his then-current status under the law as we have described it. Namely, the certificate correctly informs a felon that the certificate, or discharge from state custody, does not itself constitute a pardon, expungement, or restoration of civil rights. A felon's rights are restored by operation of the Louisiana Constitution "upon termination of state and federal supervision," which may in some cases include a term of supervised release or parole to be served after the felon has been discharged from state custody. Similarly, the certificate correctly informs a felon that the certificate, or discharge from state custody, does not entitle him to buy, receive or possess firearms. Pursuant to state statute, the felon does not regain the right to possess a firearm until ten years after the

completion of his sentence.  In sum, the certificate has no legal effect, but simply provides a discharged felon with notice of his then-current statuts under Lousiana law.  Therefore, it has no bearing on our analysis.

As we have found that the Louisiana Constitution restored essentially all of Dupaqier's civil rights upon completion of his sentence on July 14, 1980, and the statutory restriction on his right to possess firearms terminated on July 14, 1990, we hold that Dupaquier was not a convicted felon within the meaning of sections 921(a)(20) and 922(g)(1) at the time of the alleged conduct on August 8, 1990.  His conviction on count one must therefore be reversed.

B.   The Enhancement of Dupaquier's Sentence Under Section 924(e)

Dupaquier was sentenced under 18 U.S.C. section 924(e)(1) (1988) (the Armed Career Criminal Act) which provides:

> In the case of a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . .

Inasmuch as Dupaquier's conviction under section 922(g) must be reversed, his sentence under section 924(e) must necessarily be vacated as well.  We therefore do not reach the question whether the three predicate convictions in Louisiana state court in 1979 were "multiple convictions arising from multiple criminal transactions . . . [to] be treated as separate convictions [for purposes of section 924(e)(1)] . . . ."  United States v. Herbert,

860 F.2d 620, 621-22 (5th Cir 1988), <u>cert. denied</u>, 490 U.S. 1070 (1989), <u>and</u> <u>reh'g denied</u>, 492 U.S. 927 (1989).

C.    <u>The Validity of 18 U.S.C. §§ 922(q) and 924(c)(1) and 26 U.S.C. § 5861(d)</u>

Dupaquier, relying on <u>United States v. Lopez</u>, ___ U.S. ___, 115 S. Ct. 1624 (1995), argues that his convictions on all three counts must be reversed.  In <u>Lopez</u>, the Supreme Court held that 18 U.S.C. section 922(q)(1)(A) (Supp. V 1993) (the Gun-Free Schools Act) exceeded the power of Congress under the Commerce Clause of the United States Constitution.  By failing to raise this issue below, however, Dupaquier is barred from raising it here for the first time unless the district court committed plain error. Fed. R. Crim. P. 52(b).  Plain error, including error with respect to purely legal questions, "is synonymous with 'clear' or 'obvious'" error and, "'[a]t a minimum,' contemplates an error which was 'clear under current law' at the time of the trial." <u>United States v. Calverley</u>, 37 F.3d 160, 162-63 (5th Cir. 1994) (en banc) (quoting <u>United States v. Olano</u>, ___ US ___, 113 S. Ct. 1770, 1777 (1993)), <u>cert. denied</u>, 115 S. Ct. 1266 (1995).  Because <u>Lopez</u> was not yet decided at the time of Dupaquier's trial and sentencing, we cannot say that the district court committed plain error in failing to consider the validity of these statutes under the Commerce Clause.

We therefore reverse Dupaquier's conviction on count one and affirm on counts two and three.  Because the sentences imposed by the district court on the three counts were intertwined, we vacate the sentences on counts two and three and remand for resentencing.

REVERSE in part, AFFIRM in part, and VACATE and REMAND for resentencing.