UNITED STATES of America

v.

Rodney Lynn BOLTON.

Criminal Action No. H–98–324.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 12, 1999.

Rodney Lynn Bolton, Federal Public Defender, Houston, TX, pro se.

Brent Evan Newton, Office of Federal Public Defender, Houston, TX, for Rodney Lynn Bolton.

Richard Harris, Office of U.S. Attorney, Houston, U.S. Marshal, Houston, U.S. Probation, Houston, Pretrial Services, Houston, for U.S.

## ORDER

GILMORE, District Judge.

Pending before the Court is Defendant Rodney Lynn Bolton's motion to dismiss the indictment. (Instrument No. 14). Based on the parties' submissions and the applicable law, the Court finds that Defendant's motion should be **GRANTED**.

### I.

According to the Government, on April 9, 1998, the Texas Department of Public Safety (the "DPS") executed a search warrant at Defendant Rodney Lynn Bolton's ("Bolton's") residence. The DPS agents allegedly "discovered a methamphetamine lab and seized a quantity of methamphetamine and a pistol." (Government's Response, Instrument No. 16, ¶ 1). On April 29, 1998, purportedly after determining that Bolton had a prior felony conviction, the Bureau of Alcohol, Tobacco, and Firearms (the "ATF") executed another search warrant at Bolton's residence and seized firearms that were supposedly left behind by the DPS. Subsequently, on August 19, 1998, Bolton was charged by indictment with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

### II.

Section 922(g)(1) states that:

[i]t shall be unlawful for any person ... who has been convicted in any court of, a *crime punishable by imprisonment for a term exceeding one year* ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added). "Conviction" is thus defined in 18 U.S.C. § 921(a)(20). Section 921(a)(20) provides that:

What constitutes a conviction of a crime shall be determined in accordance with the

law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added). The Fifth Circuit has noted that the " 'clarity of [section 922(g)(1) ] is clouded by 18 U.S.C. § 921(a)(20).' " *United States v. Thomas,* 991 F.2d 206, 209 (5th Cir.1993). "Section 921(a)(20) was added to the Federal Gun Control Act" by the Firearms Owners' Protection Act (the "FOPA") "in 1986 to give federal effect to state statutes that fully 're-store' the civil rights of convicted felons when they are released from prison, or are granted pardon, or have their convictions expunged." *Id.* Essentially, the FOPA "gave states' statutes federal effect by allowing the state that obtained the conviction to determine eligibility of the felon to possess a firearm without violating federal law." *Id.* "Since its enactment, ... [section] 921(a)(20) has been an integral element of the definition of 'felony' or, more precisely, of the term 'crime punishable by imprisonment for a term exceeding one year' found in ... [section] 922(g)(1)." *Id.*

In this case, the predicate conviction upon which the prosecution of Bolton is based is a 1975 felony conviction for assault with the intent to rob that occurred in Oakland County, Michigan. (Bolton's Motion, Instrument No. 14, ¶ 3). Bolton contends, however, that he is not a convicted felon for purposes of section 922(g)(1) since his civil rights were restored by Michigan law prior to his alleged unlawful possession of a firearm in April of 1998. According to Bolton, after he completed his two-year sentence of probation for the felony conviction, his civil rights were restored and he was no longer prohibited from possessing a firearm under section 922(g)(1). The government responds that the prohibitions of section 922(g)(1) do apply to Bolton because all of his civil rights were not restored to him—namely, the civil right to serve on a criminal jury. (Government's Response, Instrument No. 16, ¶ 2).

The issue raised by the parties turns on an interpretation of law, involves no disputed facts, and concerns "the interaction of states laws with sections 922(g)(1) and 921(a)(20)." *Thomas,* 991 F.2d at 209; *See United States v. Sanders,* 844 F.Supp. 1407, 1408 (D.Colo. 1994). Here, pursuant to section 921(a)(20), this Court looks to Michigan law to determine whether Bolton was a convicted felon for purposes of section 922(g)(1). *See United States v. Dupaquier,* 74 F.3d 615, 617 (5th Cir.1996). Specifically, the Court looks to Michigan law to determine whether Bolton's civil rights were restored prior to the agents' seizure of the pistol and firearms in April of 1998. *Id.* If his rights had been restored under Michigan law, the Court must grant Bolton's motion to dismiss the indictment. *See Sanders,* 844 F.Supp. at 1410.

To determine whether a convicted felon's rights were "restored" under section 921(a)(20), the Fifth Circuit has adopted the two-part test introduced by the Ninth Circuit in *United States v. Gomez,* 911 F.2d 219 (9th Cir.1990). *See Thomas,* 991 F.2d at 213; *Dupaquier,* 74 F.3d at 617. First, the Court must ask whether "the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification or passively with automatic reinstatement ...." *Thomas,* 991 F.2d at 213. If the defendant's civil rights had been restored within the meaning of section 921(a)(20), the Court must "then determine whether the defendant was nevertheless expressly deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction." *Id.*

Thus, this Court begins by asking whether Michigan law revived, either passively or actively, essentially all of Bolton's civil rights. *See Dupaquier,* 74 F.3d at 617. In addressing this inquiry with respect to Texas law, in *United States v. Thomas,* the Fifth Circuit determined whether the state law of Texas had restored all or essentially all of the defendant's civil rights by initially looking to whether Texas law provided a generalized

restoration of a felon's civil rights. 991 F.2d at 214; *Dupaquier,* 74 F.3d at 618. After finding that Texas law did not actively or passively restore all or essentially all of the civil rights of criminals, the Court then looked to whether Texas law restored to a felon "the three civil rights considered key by the Ninth and Sixth Circuits—*the right to vote, hold public office, and serve on a jury.*" *Thomas,* 991 F.2d at 214 (emphasis added); *Dupaquier,* 74 F.3d at 618; *see United States v. Driscoll,* 970 F.2d 1472, 1480 (6th Cir.1992) (determining that a "state restores the civil rights of felons if it allows them to vote, hold public office and serve of juries").

Here, "Michigan law provides no statutory or constitutional definition of when restoration [of a convicted felon's rights] occurs." *Lyons v. United States,* 794 F.Supp. 238, 240 (E.D.Mich.1992); *United States v. Butler,* 788 F.Supp. 944, 946 (E.D.Mich.1991). In fact, "Michigan does not have a general restoration statute." *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991). With respect to the civil rights considered key by the Ninth and Sixth Circuits, the Government concedes that despite the fact that Michigan does not have a general restoration statute, once Bolton was released from custody, he became entitled under Michigan law to exercise his civil right to vote and hold public office. (Government's Response, Instrument No. 16, ¶ 2); *see Dahms,* 938 F.2d at 133–34 (holding that once incarceration ends, convicted felon's right to vote and to hold public office is restored automatically by Michigan law); *United States v. Hammonds,* 786 F.Supp. 650, 667 (E.D.Mich.1992); *Butler,* 788 F.Supp. at 946–47. The Government, however, maintains that Michigan law did not restore to Bolton the civil right to serve on juries because "Bolton's right to serve on a criminal jury is restricted." (Government's Response, Instrument No. 16, ¶ 2).

To date, the Fifth Circuit has not examined the effect of Michigan law on a federal prosecution under 18 U.S.C. § 922(g)(1). Several other circuits, however, have addressed this issue, but have reached different conclusions as to whether Michigan law restores a felon's civil right to serve on juries.

In *United States v. Driscoll,* 970 F.2d 1472, 1478–79 (6th Cir.1992), the Sixth Circuit held that Michigan law did not restore a convicted felon's civil rights upon his release from prison because "Michigan did not restore the right of convicted felons to sit on a jury." The Court based its decision, in part, on Michigan Court Rule 2.511(D)(2) of Civil Procedure which allows convicted felons to be challenged for cause during a jury selection. In particular, Rule 2.511(D)(2) states that "[t]he parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person ... has been convicted of a felony." MICH. CT. R. 2.511(D)(2). According to the Court, the Michigan Court Rules "have the force of law in Michigan" and "constitute a part of state law to be studied ... in determining whether ... [a convicted felon's] rights have been restored." *Driscoll,* 970 F.2d at 1478.

The Court then examined Michigan Court Rule 6.412(D) of Criminal Procedure which requires a court to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds set forth in Rule 2.511(D). More specifically, Rule 6.412, which governs criminal trials, adopts the challenges for cause included under Rule 2.511(D) and provides that "[i]f, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MICH. CT. R. 6.412(D)(1) and (2). Thus, "a felon may not sit on a [criminal] jury if his status is challenged." *Driscoll,* 970 F.2d at 1479.

After examining Rules 2.511(D) and 6.412(D), the Court concluded that Michigan law had not restored the defendant's right to serve on a jury. *Driscoll,* 970 F.2d at 1479. The Court reasoned as follows:

As we read Michigan law, ... [the defendant, a convicted felon,] would be automatically dismissed from jury service once either party brought his former conviction to the attention of the court in either a civil or criminal case. Furthermore, in a crimi-

nal case, Michigan court rules recommend that the trial court dismiss convicted felons on its own motion. While the trial court generally must decide whether the challenged person falls within a certain category, such a determination is not needed for convicted felons. As Judge Woods noted in *United States v. Butler*, 788 F.Supp. 944, 947 (E.D.Mich.1991), "A person either has been convicted of a felony or he has not. Once it is established that he has, the Michigan courts may not permit him to sit on a jury."

*Driscoll*, 970 F.2d at 1479.

Unlike the majority's analysis, Judge Nathaniel R. Jones, in his dissent, focused on Michigan Court Rule 2.511(D)(1) and (2) as well as section 600.1307a of the Michigan Compiled Laws Annotated. Rule 2.511(D)(1) and (2) provides that a juror may be challenged for cause for not being qualified to be a juror or for being convicted of a felony. MICH. CT. R. 2.511(D)(1) and (2). Section 600.1307a, which governs the qualifications for and competency of a juror, establishes that a juror "must be a citizen of the United States, at least eighteen years of age, conversant in English, and physically and mental capable of fulfilling the duties of a juror." *Driscoll*, 970 F.2d at 1487 (Jones J., dissenting). Furthermore, section 600.1307a states that a juror may "[n]ot be under sentence for a felony conviction at the time of jury selection." MICH. COMP. LAWS ANN. § 600.1307a(1)(e) (West 1998). Notably, Judge Jones emphasized that "this requirement is the only one pertaining to a felon's competency that the Michigan legislature imposed." *Driscoll*, 970 F.2d at 1487 (Jones J., dissenting).

In light of the qualifications listed in section 600.1307a(1)(e) and the challenges for cause included under Rule 2.511(D), Judge Jones argued that "although a convicted person's right to sit on a jury may be limited, ... Michigan law does restore that right to such persons automatically after the period of incarceration is over." *Id.* at 1487–88 (citing *Dahms*, 938 F.2d at 134). Judge Jones

explained that "if a conviction made one 'unqualified' to be a juror, even after release, under the laws of Michigan—as does being under the age of eighteen, for example—there would be no need to list conviction as a separate ground. To interpret the provision otherwise renders Rule 2.511(D)(2)[,] [which lists a felony conviction as a challenge for cause] redundant." *Id.* at 1487.

Judge Jones's position adopted the Ninth Circuit's holding in *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991). In *Dahms*, the Court referred to section 600.1307a, which revoked a felon's right to be a juror while serving his sentence, and held that "[o]nce incarceration ended ... [a convicted felon's right to serve on a jury was] restored automatically by the force of the very [Michigan] laws" that suspended this right upon his incarceration. *Id.* at 134. The Ninth Circuit's decision in *Dahms* is consistent with the Michigan Court of Appeal's holding in *Froede v. Holland Ladder & Mfg. Co.*, 207 Mich.App. 127, 523 N.W.2d 849, 851–52 (1994).

In *Froede*, the Michigan court held that "a former felon's right to serve as a juror [wa]s restored once the sentence [wa]s completed" because section 600.1307a(1)(e) "only requires that a potential juror not be under sentence for a felony at the time of jury selection and because juror qualifications are a matter of legislative control[.]" *Id.* at 852.[1] Contrary to the Government's position, the court in *Froede* did not state or imply that this holding was unique to civil trials. In fact, the court clearly expressed its disagreement with the line of federal cases, including *Driscoll*, that have interpreted Rule 2.511(D)(2) and section 600.1307a(1)(e) "as not restoring a former felon's civil right to serve as a juror." *Froede*, 523 N.W.2d at 851.

The court then examined "whether a trial court ha[d] discretion to retain a convicted felon on a civil jury where a party challenges that juror for cause" under Rule 2.511(D)(1) or (D)(2). The court concluded the following:

---

1. The subsequent appeal of the Michigan court's decision in *Froede* was denied, *Froede v. Holland Ladder & Mfg. Co.*, 451 Mich. 874, 549 N.W.2d 565 (1996), and reconsideration of that decision was denied by *Froede v. Holland Ladder & Mfg. Co.*, 453 Mich. 901, 554 N.W.2d 319 (1996).

*Consistent with our holding that a convicted felon's right to serve as a juror is restored upon completion of the sentence,* we further hold that where a challenge for cause is timely made under MCR 2.511(D)(1) or (D)(2) and it is established that the juror does not satisfy one or more of the prerequisites under ... [section 600.1307a], the trial court must excuse the challenged juror.

*Froede,* 523 N.W.2d at 852 (emphasis added). Despite this narrow limitation on a convicted felon's right to serve on a civil jury, the court's conclusion remains clear: it "disagree[s] with th[e] line of federal cases holding that a former felon's civil right to serve as a juror is not restored once that felon is no longer under sentence." *Id.* at 851.

Other cases in both the Fourth and Sixth Circuits have simply relied on the Court's decision in *Driscoll,* that Michigan law does not restore a convicted felon's right to sit on a jury, without having the benefit of the Michigan court's decision in *Froede.* *See United States v. Metzger,* 3 F.3d 756, 759 (4th Cir.1993); *United States v. Gilliam,* 979 F.2d 436, 437 (6th Cir.1992).[2]

> "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise[.]"

*Hicks v. Feiock,* 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 1428 n. 3, 99 L.Ed.2d 721 (1988) (quoting *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237–38, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940)). One federal case, which examined the effect of Michigan law on prosecutions under section 922(g)(1), noted another court's supposed "failure to consider Michigan caselaw." *Butler,* 788 F.Supp. at 947. Thus, in the absence of any persuasive data that the Michigan Supreme Court would decide that a convicted felon's right to serve on a jury is not restored upon the completion of his sentence, this

Court is "not at liberty to depart from the state appellate court's resolution" of this issue of state law. *Hicks,* 485 U.S. at 629, 108 S.Ct. at 1428; *see Butler,* 788 F.Supp. at 947.

■ Given the Michigan appellate court's holding in *Froede* as well as the Ninth Circuit's decision in *Dahms,* this Court finds that Michigan law provides for the automatic reinstatement of all civil rights of convicted felons following release from custody and completion of probation. Thus, once Bolton completed his sentence in 1977, all or essentially all of Bolton's civil rights—namely, his right to vote, to hold public office, and to serve on a jury—were "restored automatically by the force of the very [Michigan] laws that suspend[ed] them." *Dahms,* 938 F.2d at 134.

Having decided that Bolton's civil rights have been restored under Michigan law, the next inquiry is whether the restoration "expressly provides that the person may not ship, transport, possess or receive firearms." 18 U.S.C. § 921(a)(20). It is undisputed that, once Bolton completed his sentence, his right to possess firearms was restored under Michigan law. (Government's Response, Instrument No. 16, ¶ 2); (Bolton's Motion, Instrument No. 14, ¶ 5). Previously, Michigan law "stipulate[d] that a person who ha[d] been convicted or incarcerated for a felony ... [could] not obtain a license to carry a pistol for eight years after release from incarceration." *Dahms,* 938 F.2d at 135. Michigan law no longer has an eight-year restriction. Now, Michigan law provides that an applicant is qualified to purchase, carry, or transport pistols if, among other things, a "felony charge against the person is not pending at the time of application." MICH. COMP. LAWS ANN. § 28.422(3)(d). The Michigan Penal Code states the following:

> (1) ... [A] person convicted of a felony shall not possess ... a firearm ... until the expiration of 3 years after all of the following circumstances exist:
>
> (a) The person has paid all fines imposed for the violation.

**2.** One unpublished Sixth Circuit opinion, *United States v. Gilliam,* 86 F.3d 1156 (6th Cir.1996), was issued after the *Froede* decision, but does not refer to the Michigan court's holding in that case.

(b) The person has served all terms of imprisonment imposed for the violation.

(c) The person has successfully completed all conditions of probation or parole for the violation.

(2) A person convicted of a specified felony shall not possess ... a firearm ... until all of the following circumstances exist:

(a) The expiration of 5 years after all of the following circumstances exist:

(i) The person has paid all fines imposed for the violation.

(ii) The person has served all terms of imprisonment imposed for the violation.

(iii) The person has successfully completed all conditions of probation or parole imposed for the violation.

(b) The person's right to possess ... a firearm has been restored pursuant to ... Michigan Compiled Laws.

MICH. COMP. LAWS ANN. § 750.224f (West 1998).

■ In this case, Bolton completed the sentence for his felony conviction for assault with the intent to rob in 1977. As a result, under Michigan law, Bolton no longer was prohibited from possessing a firearm in April of 1998, when the agents seized possession of the pistol and other firearms allegedly located in Bolton's residence. Therefore, Count 1 and Count 2 of the indictment, charging violations of 18 U.S.C. 922(g)(1), must be **DISMISSED**. Bolton's motion to dismiss the indictment is **GRANTED**. (Instrument No. 14).

The Clerk shall enter this Order and provide a copy to all parties.