[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-11825
Non-Argument Calendar
_____

D.C. Docket No. 99-00012-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

WILEY BLOCK TAIT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(February 4, 2000)**

Before TJOFLAT, BARKETT and WILSON, Circuit Judges.

WILSON, Circuit Judge:

A federal grand jury returned a two-count indictment against Wiley Block Tait in January, 1999. The indictments arose from a 1997 incident wherein Tait possessed a pistol. Count One charged Tait with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1). Count Two charged Tait with

possessing a firearm in a gun-free school zone in violation of 18 U.S.C. § 922(q)(2)(A).

Tait filed a motion to dismiss both counts, claiming that exceptions to both § 922(g)(1) and § 922(q)(2)(A) made his possession of the pistol legal. The district court granted Tait's motion to dismiss both counts, based on the court's interpretation and application of relevant statutes. The government appeals the district court's dismissal. This court reviews *de novo* dismissals based on statutory interpretation. *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1139 (11th Cir. 1992).

We affirm.

## BACKGROUND

At the time of Tait's alleged violations, Tait had three prior felony convictions in the state of Michigan: a 1958 conviction for the crime of Utter & Publish; a 1962 conviction for Attempted Larceny from a Motor Vehicle; and a 1968 conviction for Enter Without Breaking. Each conviction was punishable by imprisonment for a term exceeding one year. In March, 1997, the Escambia County, Alabama Sheriff's Department issued Tait a pistol license. On November 3, 1997, the Atmore, Alabama Police Department arrested Tait after he allegedly placed a fully-loaded gun against a student's neck while on Escambia County High School property. The two-count indictment against Tait followed.

## DISCUSSION

2

Count One: Violation of § 922(g)(1)

The grand jury's first count against Tait charges a violation of 18 U.S.C. § 922(g)(1). This section makes it "unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess a firearm in or affecting commerce or to receive a firearm which has been shipped or transported in interstate commerce. 18 U.S.C. § 922(g)(1). Tait's felony record, consisting of three separate crimes each punishable by more than one year imprisonment, brings him within the ambit of the § 922(g)(1) prohibition against possessing firearms. However, § 922(g)(1) has a pertinent exception. Section 921(a)(20) provides:

> What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

The first sentence of § 921(a)(20) makes clear that Michigan law – the state of Tait's convictions – dictates whether Tait's felonies constitute convictions under § 922(g)(1). The second sentence of § 921(a)(20) provides the exception to § 922(g)(1): a conviction will not count as a conviction for purposes of § 922(g)(1) if, *inter alia*, the state of conviction (Michigan) restores civil rights to the person previously convicted. Tait argues that he did not violate § 922(g)(1) because his civil rights were restored under Michigan law.

3

The district court determined that Michigan does restore civil rights to persons previously convicted, and that Tait's civil rights were so restored. The district court was without the benefit of a recent Sixth Circuit case, *Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999) when it rendered its decision in this case.[1] *Hampton* unequivocally confirms the district court's conclusion that Michigan restores all civil rights to convicted felons. The *Hampton* court determined that Michigan restores civil rights by operation of law (as opposed to granting certificates or otherwise memorializing the restoration). *See id.* at 702. *Hampton* relied on *United States v. Bolton*, 32 F. Supp. 2d 461 (S.D. Texas 1999), in reaching its decision. The *Bolton* court held:

> [T]his Court finds that Michigan law provides for the automatic reinstatement of all civil rights of convicted felons following release from custody and completion of probation. Thus, once [the defendant] completed his sentence . . ., all or essentially all of [his] civil rights – namely, his right to vote, to hold public office, and to serve on a jury – were "restored automatically by the force of the very [Michigan] laws that suspend[ed] them."

*United States v. Bolton*, 32 F. Supp. 2d at 465 (quoting *United States v. Dahms*, 938 F.2d 131, 134 (9th Cir. 1991)).

Thus, under *Hampton*, Tait's civil rights were restored. This conclusion does not, however, automatically qualify Tait for the exemption in § 921(a)(20). Section 921(a)(20) contains an "unless" clause: the restoration of civil rights exempts a convicted felon from the prohibition against possessing a firearm

---

[1]The state of Michigan is part of the Sixth Circuit. Thus *Hampton v. United States* is controlling on this issue until and unless the Michigan Supreme Court rules otherwise. *See Hampton*, 191 F.3d at 702.

"*unless* such . . . restoration of civil rights expressly provides that the person may not . . . possess . . . firearms.*"* 18 U.S.C. § 921(a)(20). The Supreme Court discussed this "unless" clause at length in *Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007 (1998). *Caron* involved a Massachusetts statute which prohibited felons from possessing handguns, but which did not prohibit felons from possessing rifles. The issue in *Caron* was whether the state prohibition against felons possessing some weapons, but not all, triggered the unless clause. *See id.* at 2011. The Court held that the prohibition did trigger the unless clause. The Court essentially held the unless clause is "all-or-nothing;" either state law triggers the clause by banning felons from possessing some firearms, or state law does not trigger the clause because the state does not ban felons from possessing any firearms. *See id.* Since Massachusetts had deemed felons unfit to possess some weapons, the statutory unless clause had been triggered (and therefore felons in Massachusetts do not qualify for the § 921(a)(20) exception). If Massachusetts had remained silent on the issue, the unless clause would not have been triggered.

Michigan, like Massachusetts, grants restoration of civil rights by operation of law. As such, Tait received no written restoration of civil rights which could have expressed any limitations on those rights. Rather, these limitations would also be found in Michigan law. The government contends that section 750.224f of the Michigan Code provides the limitation in Tait's case. The section prohibits

persons convicted of "specified felonies" from possessing firearms.[2]  Mich. Comp.

Laws § 750.224f (1999).  A "specified felony" is a felony in which:

> An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Mich. Comp. Laws § 750.224f(6)(I).

The government contends that one of Tait's crimes, Attempted Larceny from a Motor Vehicle, should be considered a specified felony.[3]  The district court found that Tait's attempted larceny from a motor vehicle conviction did not qualify as a specified felony.  Whether attempted larceny from a motor vehicle is a specified felony turns on whether the crime involves a substantial risk of physical force, or the use, attempted use, or threatened use of physical force as an element of the crime.  The district court, finding no Michigan law which defines physical force, determined that "a logical interpretation of the larceny from motor vehicles statute would be that physical force is not required."[4]  Absent an element of physical

---

[2]Section 750.224f contains exceptions, as well as its own restoration conditions, which are not relevant to this appeal.

[3]Specified felonies also include felonies which specifically involve controlled substances, firearms, or explosives, as well as the felonies of burglary of an occupied dwelling, breaking and entering an occupied dwelling, and arson. *See* Mich. Comp. Laws § 750.224f(6)(ii)-(v). The district court aptly concluded that by separating out burglary of an occupied dwelling and breaking and entering an occupied dwelling, Michigan legislators intended that burglary of a non-occupied dwelling and breaking and entering of a non-occupied dwelling should not themselves be considered specified felonies.  Hence, attempted larceny from a motor vehicle (being akin to burglary or breaking and entering of a non-occupied dwelling) likewise would not be a specified felony.

[4]The Michigan statute defining larceny at the time of Tait's conviction in 1962 provided:

> Any person who shall commit the offense of larceny by stealing or unlawfully removing or taking any wheel, tire, radio, heater or clock in or on any motor vehicle, house trailer, trailer

6

force, larceny from motor vehicles would not be a specified felony. Consequently, the conviction would not trigger the unless clause under *Caron*, and the restoration of Tait's civil rights would qualify for the § 921(a)(20) exception. Therefore, we hold that Tait's civil rights were unreservedly restored to him by operation of Michigan law, and Tait was not subject to prosecution under 18 U.S.C. § 922(g)(1). The district court properly dismissed Count One of the indictment against Tait.

Count Two: Violation of § 922(q)(2)(A)

The grand jury's second count against Tait charges him with a violation of 18 U.S.C. § 922(q)(2)(A) (the "Gun-Free School Zone Act"). The section states, "It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). Tait was on high school property, an obvious "school zone," at the time of his alleged criminal conduct. However, as with § 922(g)(1), an exception

---

or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00, or by imprisonment in the state prison not more than 5 years.

Any person who shall enter or break into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property of the value of not less than $5000.00, or who shall break or enter into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property regardless of the value thereof if in so doing such person breaks, tears, cuts or otherwise damages any part of such motor vehicle, house trailer, trailer or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00, or by imprisonment in the state prison not more than 5 years.

Mich. Comp. Laws § 750.356a (1968).

7

to the firearms prohibition of § 922(q)(2)(A) applies. Section 922(q)(2)(B)(ii) provides:

> Subparagraph (A) does not apply to the possession of a firearm . . . if the individual possessing the firearm is licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license. . . .

18 U.S.C. § 922(q)(2)(B)(ii).

The Gun-Free School Zone Act dictates that Tait violated federal law via possessing a handgun in a school zone *unless* Tait was licensed by Alabama, *and* either Alabama or Escambia County verified that Tait was qualified to receive the license.[5] As Tait did possess a handgun in a school zone, and Tait was licensed in Alabama, the issue boils down to whether Alabama or Escambia County adequately verified that Tait was qualified to receive the license.

Alabama's licensing requirements are lenient:

> The sheriff of a county may, upon application of any person residing in that county, issue a qualified or unlimited license to such person to carry a pistol . . . if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed.

Ala. Code § 13A-11-75 (1975). The government argues that Tait's license is void for purposes of § 922(q)(2)(B)(ii) for two reasons: first, because Alabama's requirements for verifying an applicants' qualifications are too relaxed to ever

---

[5]Tait argued to the district court and on appeal that the Gun-Free School Zone Act is unconstitutional under *United States v. Lopez*, 514 U.S. 549 (1995). The district court determined that it "need not reach the constitutionality issue because Tait's permit removes him from the reach of § 922(q)." This court declines to entertain Tait's constitutional argument for the same reason.

8

qualify their licensees for § 922(q)(2)(B)(ii) protections; and second, because Tait was not a suitable person to be licensed under Alabama law. According to the government, these licensing deficiencies resulted in Tait receiving a void license which did not qualify for the exception in § 922(q)(2)(B)(ii).

The government first argues that Alabama licenses never qualify for the exception in § 922(q)(2)(B)(ii) because Alabama does not require its licensing agents to conduct background checks on firearms license applicants. The § 922(q)(2)(B)(ii) exception only applies if "... the law of the State ... requires that ... [the sheriff] verify that the individual is qualified under law to receive the license." 18 U.S.C. § 922(q)(2)(B)(ii). By its basic terms, the statute merely requires that the Alabama sheriff ensured that Tait was qualified *under Alabama law* to receive the license. While the Alabama law is extremely lenient, it is nonetheless the only pertinent law. Alabama has chosen its laws, and these are the laws which determine whether the federal statute's exception applies. *See Caron v. United States*, 524 U.S. 308, 118 S.Ct. at 2011-12.[6] Alabama is free to set forth its own licensing requirements, and Congress chose to defer to those licensing requirements when it established "qualified under law" as its criterion for the

---

[6] The *Caron* court noted, in the context of a discussion of § 922(g), that state laws provide the source of law for determining restoration issues, as well as for determining whether a former felon is too dangerous to possess a firearm. In other words, federal law uses state findings to determine whether the federal law has been violated. *See Caron*, 524 U.S. 308, 118 S.Ct. at 2011-12.

9

exception to the Gun-Free School Zone Act. Therefore the government's first argument with respect to § 922(q)(2)(B)(ii) is rejected.[7]

The government next argues that Tait failed to qualify for an Alabama license, even under Alabama's lax standards, because Tait was not a suitable licensee. The government maintains that Tait was not suitable based on Alabama Code section 13A-11-72(a), which provides: "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his . . . possession or under his . . . control." Ala. Code § 13A-11-72(a) (1975). The government's argument fails due to a recent Eleventh Circuit opinion, *United States v. Fowler*, 11th Cir., 1999, ___ F.3d ___ (No. 99-6105, Dec. 17, 1999). The *Fowler* court held, "Without an express limitation on the certificate restoring civil and political rights. . ., under Alabama law the restoration of civil and political rights restores the firearm rights limited by § 13A-11-72(a)." *Id.*

The government tries to distinguish *Fowler* on two bases: first, that the defendant in *Fowler* received a written pardon restoring his civil rights (whereas

---

[7]The government argues that Alabama's licensing requirements are so relaxed that they will always fail to qualify their licensees for the § 922(q)(2)(B)(ii) exception. The government maintains that Congress envisioned a background check when drafting the exception. This would require states to check for prior felonies before issuing firearms licenses. If the state failed to do so, their licenses would be valid for state purposes, but the licensees would not garner the § 922(q)(2)(B)(ii) protections. While the government's argument is persuasive, it misses the point. Tait's civil rights were fully restored by operation of Michigan law; hence, even if Alabama had conducted a background check, Tait would have qualified for the license so long as Alabama allowed former felons to possess firearms. Whether Tait qualified for a license under Alabama laws is discussed later in this opinion. Having determined that Alabama's licensing procedure is not relevant to this appeal, we decline to decide whether, in general, Alabama's licensing procedure qualifies its licensees for § 922(q)(2)(B)(ii) protections.

Tait's civil rights were restored via operation of Michigan law); and second, that the *Fowler* case involved the interpretation of § 922(g) rather than § 922(q). Both distinctions are irrelevant. First, the Supreme Court held in *Caron*, "Massachusetts restored petitioner's civil rights by operation of law rather than by pardon or the like. This fact makes no difference." *Caron*, 524 U.S. 308, 118 S.Ct. at 2011. The critical issue is *whether* civil rights were restored unconditionally – not *how* the civil rights were restored. Tait's civil rights were restored, without reservation; thus Tait is entitled to the same protections as any other person without state-imposed limitations on his civil rights – including the protections of the § 922(q)(2)(B)(ii) exception.

As for the government's second point, the fact that this court was evaluating § 922(g) rather than § 922(q) in *Fowler* is entirely irrelevant. Utilizing *Fowler's* line of reasoning, this court holds that Tait's firearms rights were restored for purposes of exceptions to § 922(g) as well as § 922(q). *Fowler* held that a felon's right to firearms was completely restored for purposes of removing § 13A-11-72(a) limitations. *Fowler*, ___ F.3d at ___. Tait's suitability for firearms licensing was equally restored. To hold otherwise would be non-congruous with *Fowler*. We therefore hold that the district court properly dismissed Count Two of the indictment against Tait.

## CONCLUSION

Wiley Block Tait, a former felon, possessed a firearm in a gun-free school zone. Under some circumstances, these facts would have subjected Tait to

11

prosecution under 18 U.S.C. § 922. However, Tait violated neither 18 U.S.C. § 922(g)(1) nor 18 U.S.C. § 922(q)(2)(A) in this instance, because both sections have exceptions which legalized Tait's possession. Therefore, the district court's order is

AFFIRMED.