IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10862
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERALD LEE OSBORNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

August 21, 2001

Before HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges, and DOWD,[*]
District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Gerald Lee Osborne appeals from his conditional guilty plea to
the charge of felon in possession of ammunition in violation of 18
U.S.C. §§ 922(g)(1) and 924(a)(2). We are persuaded that Osborne
did not commit the charged crime because his prior convictions are
excluded by 18 U.S.C. § 921(a)(20). We REVERSE Osborne's federal
conviction and REMAND for dismissal of the indictment.

This case turns on the interpretation of a federal statute
that limits the felonies that will support a prosecution under the
federal prohibition of possession of firearms by a felon. In

_____

[*] District Judge of the Northern District of Ohio, sitting by
designation.

general, the federal statutory scheme excludes a state felony conviction where the felon's civil rights, including the right to possess firearms, have been restored by the convicting state. We must examine the law of the convicting state to determine if the felon's civil rights have been restored. We are nonetheless answering a federal question–what restoration counts under the federal statute. States restore civil rights in myriad ways in scope and time. As we will explain, the Supreme Court has made plain that the restoration of the right to possess firearms must be complete, so we know that the conviction will count in a federal prosecution if the restored right to possess firearms did not include all firearms.

Today, our question is not about scope; rather it is about the timing of the restoration by the state. It has two aspects. Five years after serving his sentence, all of Osborne's civil rights were restored. Thereafter, Illinois changed its law to deny felons the right to possess weapons. So when Osborne was indicted in this case, his civil rights had been restored by Illinois, but taken back in part.

The government urges that because Osborne's right to possess a firearm was not restored on his release, but rather five years later, the Illinois conviction will support a federal prosecution. Alternatively, the government argues, at the time Osborne possessed the bullets (not in Illinois) it was illegal to do so under Illinois law. We conclude that by the plain language of the

2

federal statute, when Osborne's civil rights lost on his conviction were restored, that conviction ceased to support federal prosecutions. The restoration need not be at the moment of his release or service of sentence, and once civil rights are restored by the convicting state, later changes in state law are not relevant.

I

Gerald Lee Osborne was twice convicted of burglary in Illinois: once in 1970 and once in 1972. He received two sentences, both in excess of one year, which he served. On March 7, 1975, after he had completed his sentences, the Illinois Department of Corrections sent him a letter stating that his right to vote, to serve on juries, and to administer estates had been restored. By operation of law, Osborne's right to hold public office was also restored upon completion of his sentence.

At this time, Illinois law permitted convicted felons to possess firearms starting five years after the completion of their sentence.[1] In 1984, however, the Illinois legislature prohibited convicted felons from ever possessing firearms.[2] Illinois courts have construed that statute as covering all convicted felons, even

---

[1] *See* Ill. Rev. Stat. ch. 38, ¶ 24-3.1(a)(3) (1975).

[2] *See* 720 Ill. Comp. Stat. 5/24-1.1(a) (2001).

3

those whose right to bear firearms was restored prior to the passage of the act.[3]

In 1999, Osborne admitted to an FBI agent that he possessed five .357 Magnum bullets. He was charged with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court denied his pretrial motions to dismiss the indictment and for a jury instruction supporting his view of the statute. He entered into a conditional plea agreement, reserving the right to challenge on appeal whether the 1984 Illinois statute prohibiting felons from possessing ammunition brought him within the scope of § 922(g), and whether the "knowingly" element of § 922(g) required that he know that he was a felon prohibited from possessing firearms.

The district court granted Osborne a downward departure, imposing probation, on the grounds that Osborne had good reason to believe that all of his civil rights had been restored, and that his possessing ammunition was not a federal crime. This appeal followed.

## II

Osborne was charged with violating 18 U.S.C. § 922(g), which provides that "[i]t shall be unlawful for any person - (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to . . . possess in or

---

[3] *See People v. McCrimmon*, 501 N.E.2d 334, 336-37 (Ill. App. Ct. 1986).

4

affecting commerce, any firearm or ammunition."[4]  Osborne unquestionably possessed ammunition that had moved in interstate commerce.  He argues that he does not qualify as a convicted felon because of 18 U.S.C. § 921(a)(20).  That statute provides, in pertinent part, that:

> Any conviction . . . for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.[5]

When applying section 921(a)(20), this circuit follows a two-part test.  "We first ask whether 'the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification or passively with automatic reinstatement."[6]  In this case, the answer to that question is "yes."  Upon his discharge from prison, Osborne's rights to vote, sit on juries, and hold public office were restored.[7]  Five years later he regained his right to possess firearms.

---

[4] 18 U.S.C. § 922(g) (2001).

[5] 18 U.S.C. § 921(a)(20) (2001).

[6] *United States v. Dupaquier*, 74 F.3d 615, 617 (5th Cir. 1996).

[7] In the absence of a generalized restoration of civil rights, we look to these three key rights to determine whether "essentially all" of a felon's rights have been restored.  *See id.* at 618.

With a "yes" answer, we then ask whether "the defendant was nevertheless expressly deprived of the right to possess a firearm."[8]

A

The government says that, by the federal statutory definitions, Osborne's civil rights were not restored sufficiently under section 921(a)(20). This is because, while Illinois immediately returned to him his right to vote, to serve on juries, and to hold public office, Illinois law at the time provided that convicted felons could not carry firearms until five years after the completion of their sentence.

To the extent that this argument rests on a suggestion that the right to bear arms must be regained at the same time all other civil rights are regained, our case law rejects it. In *United States v. Dupaquier*,[9] the defendant had been convicted of a felony in Louisiana, and served his sentence. Upon his release from prison, the Louisiana constitution generally restored his civil rights.[10] A Louisiana statute, however, provided that convicted felons could not possess firearms until "ten years after the date of completion" of their sentences.[11] We said:

---

[8] *Id.* at 617.

[9] 74 F.3d 615 (5th Cir. 1996).

[10] *Id.* at 617–18.

[11] *Id.* at 618.

> As we have found that the Louisiana Constitution restored essentially all of Dupaquier's civil rights upon completion of his sentence on July 14, 1980, and the statutory restriction on his right to possess firearms terminated on July 14, 1990, we hold that Dupaquier was not a convicted felon within the meaning of sections 921(a)(20) and 922(g)(1) at the time of the alleged conduct on August 8, 1990.[12]

Thus, under *Dupaquier*, there is no insistence upon a complete coincidence in time for the restoration of civil rights. A waiting period does not mean that a restoration of a convicted felon's civil rights can never qualify under section 921(a)(20). Rather, a federal prosecution cannot rest upon a conviction for which such a restoration of rights has occurred, because that conviction is excluded from section 922(g)(1) once the waiting period has elapsed.

Decisions by the Supreme Court have not eroded *Dupaquier*'s controlling force. The reading of section 921(a)(20) in *Caron v. United States*[13] is instructive. Caron had been convicted of several felonies under Massachusetts law, and argued that those convictions should not count because his civil rights had been restored by operation of Massachusetts law. The Court considered whether a provision of Massachusetts law providing that convicted felons could, after five years, possess rifles and shotguns would trigger

---

[12] *Id.* at 619.

[13] 524 U.S. 308 (1998).

the "unless" clause in section 921(a)(20).[14]  The Court held that the prosecution could proceed because while Massachusetts did not forbid the weapon Caron possessed, it did not restore his right to possess all weapons that other citizens were entitled to possess.[15] The Court focused only on Massachusetts's prohibition of handgun possession, without any hint that the five-year waiting period was relevant.  The dissent was even more specific: Justices Thomas, Scalia, and Souter stated that "Massachusetts law did not expressly provide that petitioner could not possess firearms. . . . Petitioner was 'entitled to' a firearm identification card five years after his release from prison."[16]

The lesson of *Dupaquier* is that a state may restore a felon's civil rights, but impose a waiting period upon his right to possess firearms.  Once that waiting period expires, the relevant state conviction ceases to count for purposes of sections 921(a)(20) and 922(g)(1).

B

The government next argues that the 1984 Illinois statute barring convicted felons from possessing firearms triggers the "unless" clause.  As we explained, Illinois would apply its statute

---

[14] 524 U.S. at 311.  The "unless" clause is the portion of section 921(a)(20) that reads "unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

[15] *Id.* at 315-16.

[16] *Id.* at 317 & n.* (Thomas, J. dissenting).

8

to felons who were released from prison prior to 1984, even those who had been released from prison for more than five years when the statute was enacted. Osborne, for example, would have violated Illinois law had he possessed his bullets in Illinois. The question before us is whether that fact suffices to trigger the "unless" clause.

We reiterate that our task is to interpret a federal statute. Whether a state restriction of a felon's civil rights triggers the "unless" clause of section 921(a)(20) is a question of federal law. Here, because the language of the federal statute is plain and unambiguous, it begins and ends our enquiry. We give effect to plain and unambiguous language, unless a literal interpretation would produce an irrational result.[17] The relevant language of section 921(a)(20) is plain and unambiguous.[18]

---

[17] *Kelly v. Boeing Petroleum Servs.*, 61 F.3d 350, 362-53 (5th Cir. 1995).

[18] We are not alone in this viewpoint. Two other federal circuits have read this statute and concluded that its plain meaning requires the view we adopt today. *See United States v. Cardwell*, 967 F.2d 1349, 1350-51 (9th Cir. 1992) ("The plain meaning of this use of the present tense is that the courts must determine the effect of the . . . restoration of civil rights at the time it is granted and cannot consider whether the defendant's civil rights later were limited or expanded."); *United States v. Norman*, 129 F.3d 1393, 1397 (10th Cir. 1997) (quoting *Cardwell*).

Those circuits have placed primary emphasis on the use of the present tense in section 921(a)(20). We find the use of the words "such . . . restoration" to be considerably more compelling. We cannot see how the statute could have been written to consider subsequent revocations of the right to possess firearms by merely changing the tense, without also changing the "such . . . restoration" language.

9

Reinforcing our conclusion that restoration of civil rights need not be effective immediately on completing a sentence, we further conclude that the statute requires courts to look to the law at the time a defendant's civil rights were restored, without reference to later changes in the law. The use of the phrase "such . . . restoration of civil rights" is sufficiently clear; it refers back to the restoration of civil rights discussed in the previous clause. While courts may debate the question of whether "such . . . restoration" includes the full compass of state law at the time a prisoner is released from custody, as opposed to just the law invoked in a restoration certificate or a restoration statute,[19] it cannot be that "such . . . restoration" includes laws that had not been passed at the time the restoration occurred. By contrast, the statute does not read "unless state law expressly provides that the person may not possess firearms."

---

*See also United States v. Haynes*, 961 F.2d 50, 53 (4th Cir. 1992) (analyzing only the law in place at the time defendant's civil rights were restored).

[19] *See, e.g., United States v. Thomas*, 991 F.2d 206, 212-13 (5th Cir. 1993) (speculating that "such . . . restoration" might be limited to the part of the state statutes which affirmatively restore rights, and might exclude restrictions codified elsewhere in the state's code).

In reaching this conclusion, we are taking sides in a conflict amongst the federal circuits. The Fourth,[20] Eighth,[21] Ninth,[22] and Tenth[23] Circuits have held that section 921(a)(20) looks only to the law of the state at the time a felon's civil rights are restored. The Seventh Circuit appears to be of a contrary view. In *Melvin v. United States*,[24] the Seventh Circuit upheld a section 922(g)(1) conviction. In that case, the defendant pointed out that his general civil rights were restored upon his release from prison in 1977, the five-year waiting period expired in 1982, and his state right to possess firearms was not again curtailed until 1984.[25] The Seventh Circuit nevertheless held that because Illinois considered the defendant's firearm possession unlawful at the time he possessed firearms, section 921(a)(20) did not apply and the prior convictions counted for section 922(g)(1) purposes.[26] Neither *Melvin* nor the cases it cites, however, explain how its

---

[20] *See Haynes*, 961 F.2d at 53.

[21] *See United States v. Traxel*, 914 F.2d 119, 124 (8th Cir. 1990).

[22] *See Cardwell*, 967 F.2d at 1350-51.

[23] *See United States v. Fowler*, 104 F.3d 368, 1996 WL 734637 (10th Cir. 1996) (unpublished); *United States v. Norman*, 129 F.3d 1393, 1397-98 (10th Cir. 1997) (approving *Fowler* on this issue).

[24] 78 F.3d 327 (7th Cir. 1996).

[25] *Id.* at 329-30.

[26] *Id.* at 330.

11

interpretation can be squared with the plain text of the statute. We are unable to agree that "such . . . restoration" includes statutes not passed at the time the felon's civil rights were restored.

We hold that the 1984 Illinois statute, passed after Osborne's civil rights were fully restored to him, did not trigger the "unless" clause of section 921(a)(20). We therefore REVERSE Osborne's conviction, and REMAND the case to the district court with instructions to dismiss the indictment.

REVERSED AND REMANDED