**UNITED STATES of America**

v.

**Wiley Block TAIT, Defendant.**

**No. Crim.A. 99–00012–CB.**

United States District Court,
S.D. Alabama,
Southern Division.

May 3, 1999.

Richard H. Loftin, Asst. U.S. Atty., Mobile, AL, for Plaintiff.

W.A. Kimbrough, Mobile, AL, for Defendant.

### ORDER

BUTLER, Chief Judge.

This matter is before the Court on defendant's motion to dismiss both counts of the indictment. The issues raised in the motion have been well briefed by the parties, both in pleadings and at oral argument. After careful consideration of these issues, the Court finds that the motion is due to be granted as to both counts.

Defendant Wiley Block Tait is charged in a two-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One) and with possessing a firearm in a gun-free school zone in violation of 18 U.S.C. § 922(q) (Count Two). According to the indictment, the defendant has three prior felony convictions in the state of Michigan—a 1958 conviction for the crime of Utter and Publish, a 1962 conviction for Attempted Larceny from a Motor Vehicle and a 1968 conviction for Entering Without Breaking.

In general, it is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess any firearm in or affecting commerce or to receive any firearm which has been shipped or transported in interstate commerce. 18 U.S.C. § 922(g). Congress has, however, enacted an exception to this general rule.

What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person ... has had his civil rights restored shall not be considered a conviction for purposes of this chapter unless such ... restoration of civil rights ex-

pressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Defendant argues that his possession of a firearm did not violate § 922(g)(1), despite his felony convictions, because his civil rights have been restored under Michigan law. The government contends that Michigan has not restored Tait's civil rights and, even if it has, the exception does not apply because Michigan law expressly restricts defendant's ability to own a firearm.

■ Whether Michigan law completely restores the civil rights of a convicted felon has been the subject of debate among courts. A state restores a felon's civil rights if it allows him to vote, to hold public office and to serve on a jury. *United States v. Cassidy,* 899 F.2d 543 (6th Cir.1990). In *United States v. Driscoll,* 970 F.2d 1472 (6th Cir.1992), the Sixth Circuit held that Michigan law does not completely restore a convicted felon's civil rights because it restricts his ability to serve on a jury. Therefore, the *Driscoll* court held that a defendant who had a prior Michigan felony conviction, was properly convicted under § 922(g)(1) and could not avail himself of the restoration of civil rights exception found in § 921(a)(2). Prior to *Driscoll,* the Ninth Circuit reached the opposite conclusion, finding that Michigan law completely restored a convicted felon's right to vote, to hold public office and to serve on a jury. *United States v. Dahms,* 938 F.2d 131 (9th Cir.1991).

Recently, in *United States v. Bolton,* 32 F.Supp.2d 461 (S.D.Tex.1999), Judge Gilmore addressed the conflict between *Driscoll* and *Dahms.* To reconcile that conflict, she relied on a Michigan appellate court decision, *Froede v. Holland Ladder & Mfg. Co.,* 207 Mich.App. 127, 523 N.W.2d 849 (1994), rendered after the conflicting circuit court opinions. In *Froede* the defendants relied on *Driscoll* and its progeny to support their argument that a juror was unqualified to sit because of her

status as a convicted felon. The court expressly rejected *Driscoll*, stating: "We disagree with this line of federal cases holding that a former felon's civil right to serve as a juror is not restored once that felon is no longer under sentence." *Froede*, 207 Mich.App. at 132, 523 N.W.2d at 852.

After examining considering the *Driscoll* line of cases in light of *Froede*, Judge Gilmore concluded that she was bound to follow *Froede*. In so doing, she recognized that the decision of an intermediate appellate state court is " 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise[.]' " *Bolton*, 32 F.Supp.2d at 465 (quoting *Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)).

This Court, too, must follow *Froede*. The *Driscoll* court did not have the benefit of *Froede* when it rendered its decision. With the exception of *Bolton*, subsequent cases have simply relied on *Driscoll* and have made no independent analysis of Michigan law. *See, e.g., United States v. Metzger*, 3 F.3d 756, 759 (4th Cir.1993); *United States v. Gilliam*, 979 F.2d 436 (6th Cir.1992).[1] Accordingly, the Court finds that Tait's civil rights have been restored pursuant to Michigan law.

■ The government argues that even the restoration of Tait's civil rights does not save him from the reaches of the federal felon-in-possession statute because of an "exception to the exception." As noted above, the restoration of civil rights exempts a convicted felon *"unless* such ... restoration of civil rights expressly provides that the person may not ... possess ... firearms." 21 U.S.C. § 921(a)(2). The

Supreme Court has referred to this clause as the "unless clause." *Caron v. United States,* 524 U.S. 308, —— 118 S.Ct. 2007, 2009 (1998). The government contends that the unless clause is triggered here because Michigan law places restrictions on the ability of persons convicted of certain felonies to possess firearms. Section 750.224f of the Michigan Penal Code prohibits persons convicted of "specified felonies" from possessing, using, transporting, selling, etc., a firearm unless certain conditions are met. One of those conditions is that "[t]he person's right to possess, use, transport, sell, ... a firearm must have been restored pursuant to § 28.424 of the Michigan Compiled Laws." Mich.Comp. Laws Ann. § 750.224f(2)(b).

The government argues that Tait's 1962 conviction of Attempted Larceny from a Motor Vehicle qualifies as a specified felony which, in turn, triggers the "unless clause" making him liable under the felon-in-possession statute. Section 750.224f(6) defines a "specified felony" as, *inter alia,* any felony which includes as an element "the use, attempted use, or threatened use of physical force against the person or property of another ..." The government argues, without any citation to authority, that attempted larceny from a motor vehicle must involve some use of physical force against the property of another. The following statute was in effect at the time of Tait's conviction:

Any person who shall commit the offense of larceny by stealing or unlawfully removing or taking any wheel, tire, radio, heater or clock in or on any motor vehicle, house trailer or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00, or by imprisonment in the state prison not more than 5 years.

---

1. The government implies in its brief that the Sixth Circuit's continued reliance on *Driscoll* in a post-*Froede* unpublished opinion, *United States v. Gilliam,* 86 F.3d 1156, 1996 WL 272392 (6th Cir.1996) (unpublished), should be considered as an indication that Sixth Cir- cuit has rejected *Froede*. However, that case involved the second appeal of defendant's § 922(g) conviction, and the court simply refused to reconsider its holding in Gilliam's first appeal. Furthermore, *Gilliam* II did not mention *Froede*.

Any person who shall enter or break into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property of the value of not less than $5.000, or who shall break or enter into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property regardless of the value thereof if in so doing such person breaks, tears, cuts or otherwise damages any part of such motor vehicle, house trailer, trailer or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00 or by imprisonment in the state prison not more than 5 years.

Mich.Comp.Laws § 750.356a (1968).[2]

The Court has been unable to find any Michigan law defining what constitutes physical force against property. However, a logical interpretation of the larceny from motor vehicles statute would be that physical force is not required. Certainly, a person could unlawfully steal or remove parts from a motor vehicle without using force. Likewise, one could enter a motor vehicle to steal or unlawfully remove goods or property without using force. Arguably, breaking into a motor vehicle might be interpreted to require physical force, although it could be accomplished without any force at all, such as by using a key. However, it does not appear that the Michigan legislature intended breaking and entering to fall within § 750.224f(b)(6)(i). Subsection (b) statute lists several categories of felonies that qualify as specified felonies. A felony with an element of physical force against the person or property of another [subparagraph (i) ] is only one of those categories. Another category of specified felonies is a felony that "is burglary of an occupied dwelling, or *breaking and entering* an occupied dwelling."

Mich.Comp.Laws Ann. § 750.224f(b)(6)(v). If breaking and entering fell within the definition of physical force against property contemplated in subparagraph (i), then there would have been no need to enumerate separately breaking and entering of an occupied dwelling as a specified felony.

In sum, Michigan law restores the civil rights of convicted felons and places no restriction on the right of a person convicted of attempted larceny from a motor vehicle to possess a firearm. Consequently, defendant Tait is not subject to prosecution under 18 U.S.C. § 922(g) because his civil rights have been restored and the laws of the state of conviction do not restrict his right or ability to possess a firearm. For these reasons, Count One is due to be, and hereby is, **DISMISSED.**

■ Tait argues that the charge set forth in Count Two, possession of a firearm in a gun-free school zone in violation of 18 U.S.C. § 922(q), is due to be dismissed for two reasons. First, he contends that the statute is unconstitutional. Second, Tait argues that he cannot be found guilty because he had a permit, issued pursuant to state law, to carry a pistol. The Court need not reach the constitutionality issue because Tait's permit removes him from the reach of § 922(q).

Section 922(q)(2)(A), known as the "Gun–Free School Zone Law", makes it "unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." As with § 922(g), however, there are exceptions. Subparagraph (q)(2)(B) states, in relevant part:

Subparagraph (A) does not apply to the possession of a firearm . . .

(ii) if the individual possession the firearm is licensed to do so by the State in which the school zone is located or a

---

**2.** The Court's research indicates that there were no changes in § 730.356a between 1948 and 1970. Therefore, the 1968 published edition of the law is the same as the law in effect in 1962.

political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that he individual is qualified under law to receive the license.

It is undisputed that the defendant had a license to carry a pistol in a vehicle or concealed on his person issued by the Sheriff of Escambia County pursuant to § 13A–11–75 of the Alabama Code (1975).[3] What is in dispute is whether Alabama law requires a sheriff to verify that an individual is qualified to receive a license. The Alabama licensing statute provides:

> The sheriff of a county may, upon the application of any person residing in that county, issue a qualified or unlimited license to such person to carry a pistol in a vehicle or concealed on or about his person within this state for not more than one year from date of issue, *if it appears* that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol, and *that he is a suitable person to be so licensed.*

Ala.Code § 13A–11–75 (1975) (emphasis added). The Alabama Court of Criminal Appeals has interpreted this law as prohibiting a sheriff "from issuing a license to carry a pistol to a person who, by operation of law, would be ineligible for such a license." *E.M. v. State*, 675 So.2d 90, 92 (Ala.Crim.App.1995). Since a sheriff must may issue a license only to a suitable person and state law defines who is suitable, *i.e.* who is eligible to possess a pistol, *see* Ala.Code § 13A–11–72 (setting out persons who are ineligible), it follows that the sheriff must verify that any person to whom he issues a license is "qualified under law" as required by § 922(q)(2)(B).

The government relies on federal regulatory interpretation of, and Congressional intent related to, federal firearms legislation to support its argument that Alabama law does not meet the verification requirement. The government argues that Congress intended that the verification of licensees include background checks and that Alabama's licensing procedure does not meet this requirement. First, the government offers a letter issued by the Bureau of Alcohol, Tobacco and Firearms explaining to Alabama firearm's licensees regarding their responsibilities under a separate firearms provision. Apparently, the government would have the Court infer from this letter that the ATF believes that Alabama's licensing procedure does not satisfy the verification requirements of § 922(t) and, therefore, does not meet the verification requirements of § 922(q)(2)(B). The Court is hard-pressed to see how a letter from federal regulatory agency can be persuasive authority for the interpretation of state law licensing requirements. Moreover, if Congress intended that the § 922(q)(2) exception would apply only if the state used a specific type of verification procedure it could have said so. It did not.

State law prohibits the sheriff from issuing a license to a person who is ineligible. The sheriff cannot fulfill his obligation unless he has some method to verify an applicant's eligibility.[4] Consequently, state licensing requires verification. Because Tait had a license to carry a concealed pistol issued by the sheriff and Alabama law required the sheriff to verify Tait's eligibility before issuing the license, Tait falls under the exception set forth in

---

**3.** The government also contends that the defendant does not fall within the subparagraph (B)(2) exception because his license should never have been issued due to his prior felony convictions and was, therefore, void. However, the Eleventh Circuit has held that restoration of civil rights also restores a person's right to possess a firearm under Alabama law. *United States v. Swanson*, 947 F.2d 914 (11th Cir.1991). Consequently, the license was not void, despite defendants previous felony convictions.

**4.** It is difficult for the Court to imagine how a sheriff could fulfill this obligation without doing some type of background check.

§ 922(q)(2)(B). Therefore, he cannot be convicted of the crime of possessing a firearm in a school zone, defendant's motion to dismiss Count Two must also be, and hereby is, **GRANTED.**

For the reasons set forth above, it is hereby **ORDERED, ADJUDGED and DECREED** that the indictment in this case be and hereby is **DISMISSED with prejudice.**